## THE PEOPLE v. GEORGE WELCH.

*Criminal law—Trial—Conduct of prosecutor.*

On the trial of a respondent for murder, the prosecuting attorney, at the close of the testimony, stated to the court that the people would only claim a conviction for manslaughter, and the counsel who was assisting him on the trial, after referring to such fact, stated in his argument to the jury that if he believed the respondent not guilty of manslaughter, or if he had a reasonable doubt of his guilt, he would not ask the jury to convict him; to which remarks exception was taken, but no instruction requested concerning the same. And it is held, after reviewing former decisions on this subject, that the expressions used by the counsel were moderate, and explanatory of the action of the prosecutor in not asking for a verdict of murder, and why he should urge a conviction of manslaughter, and that, if respondent's counsel anticipated that the remarks might have a prejudicial effect upon the jury, he ought in fairness to have called the attention of the court to the language used, and requested a charge to remove such effect.

Exceptions before judgment from recorder's court of Detroit. (Chambers, J.) Argued May 1, 1890. Decided May 9, 1890.

Respondent was convicted of manslaughter. Conviction affirmed. The facts are stated in the opinion.

*George F. Robison,* for respondent.

*B. W. Huston,* Attorney General, and *J. V. D. Willcox,* Prosecuting Attorney (*E. F. Conely,* of counsel), for the people.

CHAMPLIN, C. J. Welch was charged with the murder of one Morris Crawford on the evening of July 23, 1889, and was convicted of manslaughter. Two errors are alleged and relied upon here for a reversal.

A brief statement of the facts is that on July 23, 1889, about 9 o'clock in the evening, Morris Crawford and Walter Mason were crossing Macomb street, on Beaubien street, in the city of Detroit, when two men, in a narrow seated side-bar buggy, drawn by a single horse, came along, and stopped on the cross-walk and obstructed the crossing. At first Crawford and Mason attempted to cross in front of the horse, but the men drove ahead, and stopped them. They then tried to cross behind the buggy, but the men pulled the horse back, and prevented them. They finally succeeded in crossing, when Crawford said they ought not to abuse the horse in that way. The men in the buggy then drove to the curb near where Crawford and Mason were, and one of the men said, "We will use you in the same way," and they both alighted, and one attacked Mason and knocked him down, and the other attacked Crawford, knocking him against the fence, and then knocking him down, and beating him. He then went to the buggy, but returned again, saying, "Damn you, I will kill you," and, lifting his head from the ground, kicked him, hitting him in the jaw, and breaking his neck, and killing him. They then resumed their seats in the buggy, and drove away. Welch and one George Considine were arrested for the crime, and were identified by witnesses, among whom was Mason, as the assaulting parties, and Welch was

identified by him and others as the person who assaulted Crawford. Welch was examined in the police court, and held for trial in the recorder's court. Upon the examination, Mason positively identified Welch as the person who attacked and struck Crawford.

Upon the trial in the recorder's court, the respondent, Welch, testified in his own behalf. On cross-examination, it was elicited that he had been arrested for burglary, larceny, and assault and battery, and on the evening of the alleged murder had been to the office of a morning newspaper, and left a challenge to fight a New York pugilist for $500. He had drank a great many times that day and evening, and had struck a by-stander in the face but a short time before the alleged affray.

After the testimony was all put in, and before going to the jury, the prosecuting attorney stated to the court that the counsel for the people had determined that in their opinion the people had not made out a case of murder, and that all they should claim from the jury was a conviction of the defendant on a charge of manslaughter. The counsel for the people, Mr. E. F. Conely, then addressed the jury, and in the course of his argument, in commenting on the duty of a prosecuting officer, said:

"I stand here representing the people of this State, of whom the defendant is one. I do not believe in partisanship in the trial of a criminal cause, nor in the exhibition of passion or feeling. It should have no place here. If I were capable of scattering among you flowers of eloquence with never so lavish a hand, I should not do it. It may seem extreme, but as I felt that the defendant should not be convicted of any offense greater than manslaughter, and with my associate have so advised the court, and asked an instruction to that effect; so, if I believed the defendant was not guilty of the crime of manslaughter, or if I had a reasonable doubt of his guilt of that offense, I would not stand before you, and ask you to convict him."

Defendant's counsel excepted to these remarks. In the further course of his argument, Mr. Conely said:

"Now, let us see what kind of a man the defendant is. He has taken the stand in his own behalf, and has admitted that he has been arrested a number of times for assault and battery, and has been convicted of breaking and entering a freight car in the day-time with intent to steal, upon which conviction sentence was suspended; and he tells you that he was a pugilist, and on that day he left a challenge to fight one Ryan. Now, that is the kind of a man that started out that morning; that is the kind of a man you have before you to-day;"—

To which remarks defendant's counsel excepted.

These two exceptions constitute the errors relied upon for reversal. The record shows that the defendant's counsel requested the court, among other things, to charge the jury that they were not to consider the admission of the defendant that he had previously been arrested for other offenses as bearing in any way upon the question of his guilt or innocence of this charge; that they were only to consider that evidence as bearing upon the credibility of the defendant as a witness in his own behalf, which request the court gave in his charge. The record also states that—

"The defendant's counsel did not request the court to charge the jury that they must not be influenced by the opinion or belief of the prosecuting attorney, or counsel for the people, relative to the guilt or innocence of the defendant, nor did they at any time ask any action or instruction on the part of the court in respect of the remarks of counsel."

Counsel for Welch insists that the remarks of counsel first above quoted were unjustifiable, and constitute an error on account of which a new trial must be granted. He cites us to the decisions of this Court in the following cases: *Hurd v. People,* 25 Mich. 416; *Meister v. People,* 31 Id. 99; *People v. Bemis,* 51 Id. 424; *People v. Quick,* 58 Id. 322; *People v. Dane,* 59 Id. 550.

In *Hurd v. People* the prosecuting attorney claimed the right to call only a part of the witnesses who were conversant with and had knowledge of the *res gestæ*. The remarks of the Court had reference to that state of facts, and not to anything which the prosecutor had said to the jury.

In *Meister v. People* counsel had been retained by private prosecutors, and at their expense, to aid in conducting the prosecution, and it was held that it was improper, and against the policy of our laws.

In *People v. Bemis* it was said that the office of prosecuting attorney was *quasi* judicial, and that he, and any one associated with him, must be exclusively the representative of public justice, and stand indifferent as between the accused party and any private interest.

It is not claimed in this case that Mr. Conley represented any private interest, or that he stood in any other capacity then as the representative of public justice. As such representative, it was his duty, if he believed the defendant guilty under the testimony, to use all fair and honorable means to secure his conviction. The defendant was represented by able counsel, and in such case the prosecuting attorney was not bound to stand aloof or indifferent, and, while he ought not to act in a partisan spirit, he should see to it that law-breakers should not go unwhipped of justice. It is not easy to conceive of a case where the testimony adduced tends strongly to show the guilt of the accused, that, in course of a proper argument, the jury will not become possessed of the opinion or belief that the prosecutor believes the accused guilty of the crime charged.

In *People v. Quick* the prosecuting attorney persisted, against repeated objections, to urge to the jury that a failure to prove discrediting facts on which a witness had been cross-examined was very significant, and if such

facts existed defendant should have shown them. A specific request for instruction correcting this false assumption was refused, and the prosecuting attorney, in further addressing the jury, said:

"I stand here to-day, under the solemnity of my official oath, and say to you, as a man and a citizen, that I believe they not only lied, but I believe they committed willful and deliberate perjury."

In commenting upon this language, we said that—

"It came from an officer whose sworn duty required him to act only in furtherance of justice, and who is bound by statutory requirements to stand entirely impartial between the complainant and the prisoner. When such an officer gives the jury to understand that what he says is under the sanction of his official oath, and the court, when applied to, declines to correct that statement, it cannot be supposed that jurors may not give credence to it, and govern their decision more or less by it. The impropriety of expressing a personal opinion to the jury upon disputed facts has always been regarded as great, and has in some notable instances led to unpleasant strictures on the character of celebrated counsel. Whatever allowance may be made for professional enthusiasm, a deliberate and solemn averment of counsel's opinion should never be allowed to influence the jury, and when given, as here, as an opinion under oath, it should have been at once shut out, and its influence guarded against by proper instructions, as requested."

It will be seen that, in the manner and substance of what was said by the prosecutor in the suit against Quick, it is materially different from the case under consideration. In the *Quick Case* the asseveration was made for the very purpose of influencing the jury to disbelieve the witnesses for respondent. The court was requested to correct this influence in his charge, and he refused. In the present case the expression was moderate, and explanatory of the prosecutor's action in not asking a verdict of willful murder, and why he should urge a conviction for manslaughter. If the counsel for respondent anticipated that the remark

might. have a prejudicial effect upon the jury, he ought in fairness to have called the court's attention to the language, and requested a charge to remove the effect of such prejudicial influence.

In *People v. Dane* the prosecutor, in his argument to the jury, said—

"That he knew that the defendant was the man who took the money."

We held this to be error, for reasons stated in the opinion. It is not analogous to this case

We have examined the record carefully, and we can see nothing to impeach the conduct of the prosecutor and his counsel in the trial of the cause. Indeed, it was urged upon the argument that the conduct of the counsel had been so fair and so impartial as to impress the jury, as it did the counsel for the respondent, with the extreme candor of counsel, and that, therefore, the language used would be likely to have great weight with the jury as affecting the guilt of respondent. The record returned here shows testimony which, if believed, could leave no reasonable doubt of the guilt of the accused. It does not strike us that the remark could or did have any prejudicial influence with the jury, and no request was made to the court to guard the jury against such influence. We therefore overrule this exception.

The second exception urged is without force, as the court did upon request of counsel give the instructions asked for, and we think the error cured. This exception is likewise overruled, and the court is advised to proceed to judgment.

The other Justices concurred.