PEOPLE *v.* SUMMERS.[1]

115   537
126   633

1. APPEAL—ASSIGNMENTS OF ERROR — OBJECTIONS TO TESTIMONY.
   Assignments of error relating to objections to the admission of testimony cannot be considered where no reasons were given for the objections, or where no exceptions were taken to the rulings.

2. JURY—COMPETENCY—CHALLENGE FOR CAUSE.
   A challenge for cause in a criminal proceeding, based upon the fact that the juror has read something about the case, is properly overruled where he states that he does not remember what he has read, that he is not prejudiced against the accused, and that he can render a fair and impartial verdict.

3. SAME—DRAWING OF TALESMEN.
   A sheriff is not disqualified from acting upon a commission for drawing talesmen in a criminal case because his name is indorsed on the information as a witness for the people.

4. CRIMINAL LAW—TRIAL—EXCLUSION OF WITNESSES.
   A contention that the respondent in a criminal case was prejudiced by the fact that persons were allowed to be sworn as witnesses for the people, although they had not observed an order of the court excluding witnesses from the courtroom, must fail where the record discloses that the trial judge satisfied himself that they had complied with the order, and there is nothing to indicate that he reached a wrong conclusion.

5. SAME—PROSECUTING ATTORNEY—DISQUALIFICATION.
   A prosecuting attorney is not disqualified from appearing in a criminal case by the fact that an unsuccessful effort had been made to employ him in a civil cause growing out of the same state of facts, and that thereupon his father was employed therein.

6. SAME—FALSE PRETENSES—INTENT—EVIDENCE.
   It is competent, upon a prosecution for obtaining a promissory note by the false pretense that it was a contract binding the makers to pay only upon the sale of certain machines for which they were to be given the exclusive agency in certain territory, to show, as illustrating the purpose or intent,

[1] Rehearing denied May 24, 1898.

that the respondents, at about the same time, were engaged in like transactions with other parties, and had already sold to others the right which they represented they were conveying to the makers of the note.

7. SAME — ELEMENTS OF OFFENSE — SUFFICIENCY OF INFORMATION.
   An information for obtaining a note by the false pretense that it was a contract for the payment of a certain sum on the contingency that the maker should sell a certain number of machines is not open to the objection that the pretense alleged is not of an existing fact, but is merely promissory in its nature, nor to the objection that it is not such a pretense as would result in the deception alleged.

8. SAME—CONSPIRACY—MERGER OF LESSER OFFENSE.
   A conviction may be had for conspiracy to obtain a note by false pretenses, although the respondents are guilty of the completed offense; the conspiracy not being merged in the felony.

9. SAME—FRAUDULENTLY OBTAINING NOTE — PLEADING.
   An information charging a conspiracy to obtain a note by false pretenses need not set out the means by which the end was to be accomplished; the end itself being unlawful.

10. SAME—SEPARATE COUNTS.
    An information may charge, in different counts, the obtaining of a note by false pretenses, and a conspiracy to commit that crime, founded on the same transaction.

11. SAME—FALSE PRETENSES—CAPACITY OF PERSON DECEIVED.
    The false pretense essential to the crime of obtaining property by false pretenses need not necessarily be such that it would deceive a person of ordinary prudence, capacity, and intelligence, but it is sufficient if it is calculated to deceive one of the capacity of the person to whom it is made.

Exceptions before judgment from Macomb; Eldredge, J. Submitted November 5, 1897. Decided January 18, 1898.

Jacob L. Summers was convicted of obtaining a promissory note under false pretenses. Affirmed.

*Sidney J. Lochner*, for appellant.

*Fred A. Maynard*, Attorney General, and *John A. Weeks*, Prosecuting Attorney, for the people.

MOORE, J.   Respondent and one H. C. Nelson were informed against jointly.   Respondent demanded a separate trial, which was granted him, and a verdict of the jury was rendered against him.   The information contained three counts.   The first one was withdrawn from the consideration of the jury by the trial judge.   The other two are as follows:

"2.  And the said prosecuting attorney further gives the court to understand and be informed that heretofore, to wit, at the township of Erin, in said county of Macomb, on the 29th day of May, 1896, the said H. C. Nelson and Jacob L. Summers, with the intent to cheat and defraud them, the said Edward Fischer and Fred Fischer, did falsely pretend and represent to the said Edward Fischer and Fred Fischer that a certain promissory negotiable note payable to the said H. C. Nelson six months after date thereof, to wit, May 28, 1896, being the date of said note, for the sum of $306, which they, the said H. C. Nelson and Jacob L. Summers, did then and there offer to said Edward Fischer and Fred Fischer to be signed by them, the said Edward Fischer and Fred Fischer, was not a negotiable promissory note, and that the same was a contract, by which they, the said Edward Fischer and Fred Fischer, were bound to pay said sum of money only on the contingency that they, the said Edward Fischer and Fred Fischer, could and would complete the sale of 36 stock-food steamers and evaporators aforesaid in the townships of Erin and Warren, in Macomb county, Troy, in Oakland county, and Grosse Pointe, in Wayne county, and that the said sum of money was not to become due or payable until the said Edward Fischer and Fred Fischer should sell 36 stock-food steamers and evaporators; and the said Edward Fischer and Fred Fischer, relying upon and believing said representations and pretenses so made as aforesaid, were deceived thereby, and were thereby then and there induced to sign, and did sign and deliver, their said note to said H. C. Nelson and Jacob L. Summers, and the said H. C. Nelson and Jacob L. Summers, by means of the false pretenses aforesaid, did then and there designedly obtain of the said Edward Fischer and Fred Fischer said negotiable promissory note of the value of $306, the making of which note and written instrument would be punishable as forgery, with the intent to cheat and defraud them, the said Edward Fischer and Fred

Fischer; whereas, in truth and in fact the said instrument, the purport of which is above set forth, was a negotiable promissory note, and the same was not then and there a contract which bound the said Edward Fischer and Fred Fischer to pay said sum of money, to wit, $306, only on the contingency that they, the said Edward Fischer and Fred Fischer, could and would complete the sale of 36 of said machines in the townships of Erin and Warren, in Macomb county, Troy, in Oakland county, and Grosse Pointe, in Wayne county, as they, the said H. C. Nelson and Jacob L. Summers, then well knew; and whereas, in truth and in fact said sum of money was to become due and payable with or without the happening of said contingency, or any other condition whatever, six months from the date of said instrument, as they, the said H. C. Nelson and Jacob L. Summers, then well knew.

"3. And, further, that heretofore, to wit, on the 29th day of May, 1896, at the township of Erin, in the county of Macomb, aforesaid, H. C. Nelson and Jacob L. Summers unlawfully, falsely, deceitfully, and fraudulently did combine, conspire, confederate, and agree together by divers false pretenses, subtle means and devices, to obtain and acquire unto themselves of and from the said Edward Fischer and Fred Fischer a certain negotiable promissory note, dated May 28, 1896, at Roseville, Michigan, for $306, with interest at 7 per cent. per annum, payable in six months after date to the order of H. C. Nelson, duly signed by Edward Fischer and Fred Fischer as makers, a more particular description of which note this informant is unable to give for the reason that the same is out of his possession and control, of the value of $306, of the goods, chattels, and property of the said Edward Fischer and Fred Fischer, and to cheat and defraud them, the said Edward Fischer and Fred Fischer, of the same; and the said H. C. Nelson and Jacob L. Summers, in pursuance of and in accordance with said combination, conspiracy, and agreement between them as aforesaid, did, on the 29th day of May, A. D. 1896, at said township of Erin, in said Macomb county, by divers false pretenses, subtle means and devices, unlawfully, falsely, deceitfully, and fraudulently obtain and acquire unto themselves of and from the said Edward Fischer and Fred Fischer, of the goods and chattels and property of the said Edward Fischer and Fred Fischer, the negotiable promissory note as above set forth in purport, with the intent to cheat and defraud the said Edward Fischer and Fred Fischer," etc.

The jury returned a verdict of guilty.

Counsel for respondent has made 90 assignments of error. Some of them relate to objections made to the admission of testimony where no reason was given for the objection, and in other instances no exception was taken to the ruling. These assignments of error cannot be considered here.

Some of the assignments of error relate to the action of the trial judge in allowing Mr. Hazleton to sit as a juror. The record shows that Mr. Hazleton had read something about the case, but it also shows that he did not remember what he had read, that he was not prejudiced against the accused, and that he could render a fair and impartial verdict. He was challenged for cause, and the challenge was, as we think, very properly overruled.

Other assignments of error relate to the manner in which the talesmen were procured. They were drawn by a commission, in accordance with the law applicable to Macomb county, of which commission the sheriff was a member. His name was indorsed on the information as a witness for the people. A challenge was made to the talesmen because of the facts just stated. It was not shown that the sheriff was an interested party in any other way than as a witness for the people. We do not think this any more disqualified him from acting upon the commission than the fact that the clerk of the court swore the witnesses, and that the judge presided at the trial, would disqualify them from acting upon the commission.

Before the trial commenced, an order was made excluding the witnesses for the people from the court-room. Some of the assignments of error relate to the action of the court in allowing persons to be sworn as witnesses who the defense claimed had not observed the order of the court. Before allowing them to be sworn, the judge satisfied himself that the witnesses had complied with the order of the court, and we find nothing in the record to indicate that he reached a wrong conclusion.

Errors are also assigned on the ground that the prosecuting attorney was disqualified from appearing in the criminal case, because he was interested in a civil cause growing out of the same state of facts, and to the action of the judge in refusing to grant a new trial upon that ground. The record shows that, when the civil case was commenced, an effort was made to employ the prosecuting attorney. He declined to be employed. His father was then employed in the civil case. It was made to appear to the satisfaction of the trial court that the prosecuting attorney was not in any way interested in the civil proceeding, and we think his conclusion was fully justified by the record.

The people produced testimony tending to show that Nelson and Summers were acting together in the transaction. They were then allowed to show that these parties had been engaged in like transactions with other parties, and that they had already sold to others the right to sell the machine in certain townships which they represented to the Fischers they were selling to them. We think this was entirely competent, as tending to throw light upon the purpose or intent of the respondent in the transaction which was the subject of inquiry. *People* v. *Henssler*, 48 Mich. 49; *People* v. *Wakely*, 62 Mich. 297.

It is claimed that the second count is not good, because the false pretense is not there stated to be an existing fact or circumstance, but was promissory in its nature; and also because the pretense alleged must be distinctly negatived; and also because there can be no false pretense when the means of detection are at hand; and also because the count fails to set forth such false pretenses as would result in the deception alleged. An examination of the second count shows that none of these objections are well taken. 2 How. Stat. § 9226; *Com.* v. *Blanchette*, 157 Mass. 486; Tiff. Cr. Law, 704.

It is claimed that the third count is defective—*First*, because a conspiracy to commit a felony is merged in the felony; *second*, because an intention to cheat and defraud

is not indictable at common law, and that a promissory note obtained by false pretenses, in the hands of the original parties, is not a valuable thing, within the meaning of 2 How. Stat. § 9161, and, as the act done was not unlawful, the means with which it was done must be set out in the information. As to the first of these contentions, we think the point has been decided by this court against the contention of counsel in the conspiracy case of *People* v. *Petheram*, 64 Mich. 258, where it was said:

"The fact that the object of the conspiracy was accomplished, and the unlawful thing conspired to be done performed and completed, does not prevent a conviction upon the charge simply that the defendants conspired to commit the act. The carrying of the conspiracy into effect does not merge the offense charged into the greater, but, if the conspiracy to perform the unlawful act is proven, the conviction follows, though the defendant might have been found guilty of the greater crime had he been charged with it." 1 Bish. Cr. Law, §§ 804, 805.

As to the other contention, in an information charging a conspiracy the rule is that either the end or the means must be unlawful. If the end be unlawful, that, and that only, may be alleged; if the end be lawful, and the means used unlawful, then the means must appear. *People* v. *Clark*, 10 Mich. 310; *People* v. *Petheram*, 64 Mich. 252. It is lawful for one to procure the note of another. It is not lawful, but criminal, for one to obtain and acquire the note of another by false pretenses, subtle means and devices. 2 How. Stat. § 9432; *State* v. *Patty*, 97 Iowa, 373. Here the information charges the respondent with conspiracy with another to accomplish an end which was unlawful and criminal, and that, in pursuance of the conspiracy, the conspirators accomplished the criminal end sought to be accomplished. We think the third count is good.

Counsel says it was error to join the second and third counts in the information. The offenses charged spring out of substantially the same transaction. The same testimony was applicable to each of these counts. We can-

not see how the respondent was prejudiced in any way by the joinder. *People* v. *McKinney,* 10 Mich. 95; *Van Sickle* v. *People,* 29 Mich. 61; *People* v. *Sweeney,* 55 Mich. 586.

Complaint is made of that portion of the charge reading as follows:

"It is not every representation that is false that will amount to a false pretense within the statute, and sustain a charge of obtaining a signature to an instrument by false pretenses. It must be one calculated to deceive and induce action on the part of the one to whom it is made. A representation as to an existing fact or thing so evidently and plainly false that no one would be deceived, that no one should believe or can be induced to act upon it, cannot sustain a charge of false pretense. Formerly it was held that, to sustain a charge of false pretense with intent to deceive and cheat or defraud, the pretense must be one that is calculated to deceive and induce action on the part of a person of ordinary prudence, capacity, and intelligence; but, as I understand, that is not now the rule, and whether the representation is calculated to deceive and induce certain action may depend upon the capacity, intelligence, and learning of the person or persons to whom the statement or representation is made. And in this case you may, in judging of this question, take in consideration the education, business ability, experience, and learning of the Fischers, as shown by the evidence; and if you find that the representation charged in this count, if made, was, in view of their capacity and ability, calculated to deceive them as to the character of the paper, and did induce them to sign it, even though you should be of the opinion that a person of ordinary prudence, capacity, and intelligence ought not to be deceived by it, you may still find that the representation was calculated to and did induce them to sign the paper. It is for you to determine whether it was calculated to and did induce their signing from all the circumstances shown."

The authorities are not uniform as to just what the rule is in relation to the character of the pretense used. The trial court, in disposing of the motion for a new trial, stated the rule, as we think it now prevails, so clearly that I quote it here:

"While there are many cases supporting the contention of the respondent that, when the pretenses used are of a character such that a person of ordinary intelligence and prudence could not be deceived by it, they do not constitute false pretenses within the statute, I think the best-considered cases hold to a different doctrine. The design of the statute was to protect the weak and shield the credulous against the arts and wiles of the shrewd and designing; and the real question on this point ought to be, and under the statute and in reason is, Was the pretense designedly false, and made to induce the action claimed, and was it successful? Its success may depend upon the weakness or strength of the party played upon. Men of much good judgment and discretion are often deceived by false pretenses used by skilled and crafty confidence men, that possibly to the ordinary jury would seem ought not to deceive anybody, while much less plausibility of pretense will rapidly capture and deceive the unwary, unlearned, and inexperienced. It ought not to be the law that one may escape the penalty of a crime in deceiving the weak to their injury by false pretenses by establishing that, if the party was not so weak, he would not have succeeded in deceiving him."

2 Russ. Crimes (International Ed.), 519; *Cowen* v. *People*, 14 Ill. 348; *State* v. *Mills*, 17 Me. 211; *State* v. *McConkey*, 49 Iowa, 499; *State* v. *Montgomery*, 56 Iowa, 196; *State* v. *Fooks*, 65 Iowa, 196, 452; *In re Greenough*, 31 Vt. 290; *Smith* v. *State*, 55 Miss. 513. See opinion of the chancellor in *People* v. *Haynes*, 14 Wend. 546 (28 Am. Dec. 530), and *People* v. *Henssler*, 48 Mich. 49.

We have examined the other assignments of error, but do not think it necessary to refer to them further than to say we deem them without merit. The verdict is affirmed, and cause remanded for further proceedings.

The other Justices concurred.