PEOPLE *v.* ECARIUS

1. CRIMINAL LAW—HURRIED TRIAL—CONTINUANCE.
   An objection that a respondent, convicted of murder upon a trial commenced only 17 days after the crime was committed, was "railroaded" into prison, and that the court erred in refusing to delay the case, is conclusively answered by the fact that no continuance was asked.

2. SAME—JURY.
   Where there is nothing in the record in a criminal case to indicate that there was any trouble in getting a competent jury, it cannot be urged on appeal that the court erred in not summoning jurors from the vicinage.

3. SAME—WITNESSES—LEAVE TO INDORSE.
   Three days before trial, counsel for respondent obtained an order for the subpœnaing of 13 witnesses in his behalf at the expense of the people. In the same order leave was granted the prosecuting attorney, upon a motion theretofore made, to add three names to those indorsed on the information, respondent making no objection thereto. *Held*, that respondent could not attack the order on appeal.

4. SAME—OPENING STATEMENT OF PROSECUTOR.
   A failure to prove all that the prosecuting attorney, in his opening to the jury, in good faith stated that he expected to prove, is not ground for reversal.

5. SAME—RESPONDENT AS WITNESS—EVIDENCE AGAINST HIMSELF.
   Respondent, charged with a murder committed with an iron bar as a weapon, being sworn on his own behalf, was required on cross-examination to put the bar in his pocket, to show the manner in which it might have been concealed. *Held*, that the illustration might properly have been made, and with

equal effectiveness, with any other person as a witness, and
therefore the error, if any, was without prejudice.

6. SAME—CLOSING ARGUMENT OF PROSECUTOR—SUMMING UP TES-
TIMONY.

A conviction for murder will not be reversed because the pros-
ecuting attorney, in his closing argument to the jury, made
the statement, " If this man goes free, no jury sitting in this
box will find the murderer of " decedent, where it does not
appear from the record that the remark was other than a
proper summing up of the effect of the testimony.

7. SAME—CONDUCT OF COUNSEL—REBUKE BY COURT—NEW TRIAL.
The fact that the circuit judge, apparently with impatience,
met an objection of respondent's counsel to the argument of
the prosecuting attorney with the remark, "Don't interrupt
counsel's argument," does not require a new trial, where the
record shows that objections of a trivial character had been
frequently interposed.

Error to Saginaw; Snow, J.    Submitted June 12, 1900.
Decided September 13, 1900.

Edward Ecarius was convicted of murder in the first
degree, and sentenced to imprisonment for life in the State
prison at Jackson.    Affirmed.

*John Hurst*, for appellant.

*F. L. Eaton*, Prosecuting Attorney, for the people.

MOORE, J.    The respondent was convicted of murder
in the first degree, and sentenced to the State prison for
life.    Two motions for a new trial were made before the
circuit judge, both of which were overruled.    The case is
brought here by writ of error.    Incorporated in the bill of
exceptions are the affidavits and counter affidavits used in
the motions for a new trial.    The zeal of counsel on both
sides has led them to make statements in their briefs not
justified by the record.

In December last, Louis Buehler was employed in a
factory near the river in the southwestern part of Saginaw.
His home was reached by going through the settled por-

tion of the city, and was in the outskirts of the city, and in the northwestern part thereof, and about three miles from where he worked. The accompanying plat will help to explain the situation.

The respondent lived near Andre street, about half way between the factory and Buehler's home. The father-in-law of the respondent lived in a shanty marked in the northeast portion of the plat.

On December 20th Mr. Buehler was paid at the factory two $5 bills and 89 cents in change, all of which were in an envelope when handed to him. It is the claim of the

people that on his way home he stopped at Starkweather's saloon, and got a flask filled with rum, and had got within 20 rods of home, when he was felled to the ground by an iron strap about 2 feet long and 2 inches wide, used to connect iron rails together, and having in the ends thereof holes through which to pass bolts; that a struggle ensued, when he was struck over the front of the head, fracturing his skull; that he either climbed over the fence or was thrown over; that he afterwards was partially revived by the rain, and attempted to crawl to his house upon his hands and knees, and was found by his mother in a dazed condition. He said that he had been pretty nearly killed by a man with a piece of iron, who had taken his money, but did not say who the man was. He was afterwards removed to a hospital, and two days later died. In this connection it is proper to say it is claimed on the part of respondent that Mr. Buehler was at this time sufficiently possessed of his mental faculties to give a coherent narrative of what occurred, and that the reason why he did not state who was his assailant was because he did not know the man; but we think a reading of the testimony indicates very clearly that he was in a dazed condition, soon became unconscious, and remained so until his death. The cap of Mr. Buehler, with much blood on it, and the iron bar, with blood upon it, were found inside the fence. The pay envelope was also found. It had been torn open, and the money removed. It was bloody. A pocketbook carried by Buehler was not found on his person. A flask corresponding to the one which had been filled at Starkweather's was in Buehler's side pocket.

It was the claim of the people that about 4 o'clock the respondent left the shanty of his father-in-law, going to a house near the factory, and leaving there about the time the factory closed, and a little later was seen by and talked with one Miller, and was also seen on Court street, going west, and still later was seen by Mrs. Streichert going west on Court street, five or six blocks from Buehler's, and that Buehler was then a short distance ahead of

him, and the respondent was walking fast, as though to overtake him. The respondent was arrested for the crime. There was a purse upon his person, in which there was a $5 bill and some change; and it is the claim of the people that there was fresh blood upon the bill, and also fresh blood upon the coat of respondent. The respondent denied all knowledge of the crime, and claimed he went near the factory to see Miller, who owed him. Miller was sworn as a witness, and denied that he owed respondent. The respondent claimed that he had been possessed of the $5 bill for some time, and had kept it hidden at his house, so it should not be spent until he needed it for a definite purpose; that, if there was blood upon it, that fact could be accounted for by his having recently filed a butcher's saw, just from the meat-block, and also from his having recently cleaned fish, and also from the fact that he had recently had nosebleed.

The foregoing statement embraces the principal claims of the parties. Mr. Buehler was assaulted December 20th. He died on the 22d. The respondent was arraigned in court December 30th, and upon the same day his present counsel was assigned to him by the court. His trial was commenced January 6th. It is now said that respondent was railroaded into prison, and that the court erred in refusing to delay the case, and also erred in not summoning jurors from the vicinage. It is a reply to these claims that no application was made for a continuance, and there is nothing in the record to indicate any trouble whatever about getting a competent jury.

It is also said that the court erred in allowing names to be indorsed upon the information; counsel citing the case of *People* v. *Casey*, *ante*, 279 (82 N. W. 883). Instead of being an authority against what was done, it is an authority sustaining the action of the court. The record shows that, on January 3d, counsel for respondent asked and obtained an order for the subpœnaing of 13 witnesses on his behalf at the expense of the State; and in the same order leave is given the prosecuting attorney, upon a motion heretofore

made, to add three names to the information. The record does not disclose that any objection was made to this order, and, under the circumstances shown, it was a very proper order to make.

Error is assigned to the opening statement of the prosecuting attorney, for the reason that he did not prove all that he stated that he should. The opening was a very temperate statement of the case which the people expected to make. There is nothing to indicate that any statement was made except in the utmost good faith. A failure to prove all that the prosecuting attorney expected to prove is not a ground for reversing a case.

Errors are also assigned concerning the admission of testimony. We do not think that any of these are well taken, and but one of them calls for discussion. The respondent was called as a witness on his own behalf. On the cross-examination the following occurred:

"*Q.* Just take this iron bar and put it in your pocket.

"*A.* Which one?

"*Q.* Either one. Put it in the outside pocket of your coat.

"*Mr. Hurst:* Don't go any further until I make an objection. I want it stated on the record that the attorney for the people hands the prisoner an iron bar, and asks him to put it into his pocket. The prisoner does it, and I make an objection. I object to that, may it please the court, as incompetent and immaterial. There is no evidence to show that this man was seen by a single person with anything of that kind about his person; the evidence all to the contrary. I say there is no evidence to base it upon. It is incompetent and immaterial, and raises a presumption against this respondent.

"*The Court:* He may answer. (Exception.)

"*Q.* Put your hand down. This comes under your arm,—just goes under your arm?

"*A.* Yes; it would tear the pocket.

"*Q.* Just put it down in your trousers pocket. It is under your arm, ain't it?

"*A.* Yes, sir."

It is said that this compelled the respondent to give

evidence against himself, and was error; citing *Stokes* v. *State*, 5 Baxt. 619 (30 Am. Rep. 72), and Kerr, Hom. § 461. In Kerr on Homicide, *supra*, the author says: "No principle of law is better settled than that a person shall not be compelled to be a witness or compelled to testify against himself. This is a right guaranteed by the constitution in most, if not all, the States,"—citing *Stokes* v. *State, supra*. The case of *Stokes* v. *State* was referred to in *State* v. *Ah Chuey*, 14 Nev. 79 (33 Am. Rep. 530), and held not to be good law. In *Walker* v. *State*, 7 Tex. App. 245 (32 Am. Rep. 595), it was held that it was not compelling a respondent to give evidence against himself, within the meaning of the law, to require him to make an impression in a soft substance, in order that said impression might be compared with a foot-print apparently connected with the homicide. See, also, *State* v. *Graham*, 74 N. C. 646 (21 Am. Rep. 493). In *State* v. *Ah Chuey*, on a question of personal identity, a witness testified that respondent had certain marks upon his person. The court compelled the respondent, against objection, to exhibit his person to the jury. See *State* v. *Garrett*, 71 N. C. 85 (17 Am. Rep. 1). None of these cases were cases in which the respondent offered himself as a witness. In *State* v. *Graham* the following language is used:

"If an officer who arrests one charged with an offense had no right to make the prisoner show the contents of his pocket, how could the broken knife, or the fragment of paper corresponding with the wadding, have been found? If, when a prisoner is arrested for passing counterfeit money, the contents of his pockets are sacred from search, how can it ever appear whether or not he has on his person a large number of similar bills, which, if proved, is certainly evidence of the scienter? If an officer sees a pistol projecting from the pocket of a prisoner arrested for a fresh murder, may he not take out the pistol, against the prisoner's consent, to see whether it appears to have been recently discharged? Suppose it be a question as to the identity of the prisoner, whether a person whom a witness says he saw commit a murder, and the prisoner appears in court with a veil or a mask over his face; may not the

court order its removal, in order that the witness may say whether or not he was the person whom he saw commit the crime? Would the robber whose face was marked with the wards of a key have been allowed to conceal his identity by wearing a mask during his trial?"

For a good many years in this State a respondent has been allowed to be sworn as a witness in his own behalf. 3 Comp. Laws 1897, § 10211. The respondent in *People v. Glover*, 71 Mich. 303 (38 N. W. 874), availed himself of that privilege. It was a material inquiry in the case whether respondent had gonorrhea or not. He swore upon his direct examination that he did not have it. On the cross-examination he was compelled, against objection, to answer questions as to his physical condition, and why he had certain bottles of medicine in the jail, and for what purpose he used their contents. It was urged that requiring him to answer these questions was to compel him to give evidence against himself, but the court held that no error was committed in requiring him to answer the questions. In *People* v. *Howard*, 73 Mich. 10 (40 N. W. 789), it is held that, when a respondent takes the witness-stand in his own behalf, he may be cross-examined the same as any other witness. It is true, a respondent cannot be required to testify against himself, but, when he becomes a witness in his own behalf, if he can throw any light upon the transaction it is his duty to do so. Speaking for myself, even if the question is properly here, I have no hesitancy in saying that, in view of the fact that respondent was a witness, the court did not err in what was done. One of my associates suggests that counsel did not assign as a reason for his objection that the effect of what the respondent was required to do was to give evidence against himself, and that fairness to the trial judge required this to be done, and, not having been done, his failure to act according to a suggestion not made is not reversible error. There is much force in this suggestion. There is another reason why the case ought not to be reversed because of what occurred at this time. It was

the claim of the people that the respondent struck the deceased from behind with the bar of iron; that he had procured it before this, and, allowing the lower end to rest in his pocket, and the upper portion in his coat-sleeve or beneath his coat, had thus concealed it from view; and it was to show the possibility of this having occurred that the request was made of respondent. The prosecutor might have made the illustration just as effective by using the iron plate in the same way in his own coat or trousers pocket, and it would have been competent for him to do so, and this would be no more prejudicial to the respondent than what was actually done. If it was an error, it was error without prejudice.

Upon the closing argument of the prosecuting attorney the following occurred:

"*Mr. Eaton:* If this man goes free, no jury sitting in this box will find the murderer of Louis Buehler.

"*Mr. Hurst:* I take exception to that remark.

"*The Court:* Don't interrupt counsel's argument."

It is very strenuously insisted that this was an expression by the prosecuting attorney of his opinion of the guilt of the respondent, and that the reply of the judge to counsel was improper, and for these reasons, if none other, a new trial ought to be granted. This court has repeatedly expressed itself as to the impropriety of the prosecuting attorney expressing to the jury his personal opinion as to disputed facts (*People* v. *Quick*, 58 Mich. 321 [25 N. W. 302]; *People* v. *Dane*, 59 Mich. 550 [26 N. W. 781]; *People* v. *McGuire*, 89 Mich. 64 [50 N. W. 786]); but it has never been held that he may not say to the jury that certain testimony in the case impresses him with the belief that the respondent is guilty, and why it so impresses him (*People* v. *Welch*, 80 Mich. 616 [45 N. W. 482]). In *People* v. *Hess*, 85 Mich. 128 (48 N. W. 181), Justice MORSE, speaking for the court, said:

" It is not proper for the prosecuting officer to tell the jury that he believes the defendant guilty, as his belief is not evidence in the case; but he has the right to argue

from the testimony that the defendant is guilty, and to state to them what evidence before them convinces him, and should convince them, of such guilt.   To deny to a prosecuting officer this privilege would be to deny to him the right to place before the jury the logic of the testimony which leads his mind to the inevitable conclusion of guilt, and which he has the right to presume will lead them to the same conclusion if they view it as he does; and he has, I think, the right to state that he stands unbiased between the people and the respondent, as we have often said he ought to stand."

An isolated sentence is taken from the argument of the prosecuting attorney, without showing the connection in which it was used.   Counsel for respondent requested the court to take the case from the jury for the reason that no competent testimony showed beyond a reasonable doubt the guilt of the respondent.   He doubtless argued in the court below to the jury, with great zeal, as he argues here, the truth of that proposition.   Was it not competent for the prosecuting attorney, in reply to this argument, to call the attention of the jury to the testimony tending to show that respondent, without any adequate reason, was near the factory when Mr. Buehler received his pay; that he was seen at several points in the route between the factory and where Mr. Buehler was found; that Mrs. Streichert saw him apparently seeking to overtake Buehler when but a few blocks from where the latter was soon found badly hurt and with his money gone; that, after Buehler was found, the bloody envelope, the bloody cap, and the bloody bar of iron were found, and soon the respondent was put under arrest; that fresh blood was found upon his clothing; that in his possession was found a bill corresponding in denomination to one paid to Buehler but a few hours before, upon which there was fresh blood,—and, after reviewing this testimony, say to the jury, "If this man goes free, no jury sitting in this box will find the murderer of Louis Buehler?"   I think this statement was but a logical summing up of the effect of the testimony, and was entirely proper.   The trial judge

124 MICH.—40.

might have treated counsel more courteously, and should not have been so impatient as the brief extract we have taken from the record indicates he was. An examination of the record, however, shows he was not wholly without excuse for his impatience. The record abounds in objections, many of them of a trivial character; but, taken as an entirety, the record impresses us with the fact that a careful and impartial trial was given the accused.

We are strongly urged to reverse the case because the trial court did not grant a new trial. Under the provisions of Act No. 134, Pub. Acts 1893, we have no doubt of our power to review the action of the circuit judge in refusing a new trial, and in a proper case it would be our duty to do so. In this case the trial judge saw the witnesses who were sworn, and he doubtless knew many of those whose affidavits were filed both for and against a new trial, and would possess better means of deciding upon the weight to be given to these affidavits. A careful reading of the record, the affidavits, and the counter affidavits does not satisfy us that the trial court erred in the exercise of his discretion in refusing a new trial.

Judgment of the court below is affirmed.

The other Justices concurred.