PEOPLE *v.* PONSFORD.

1. CRIMINAL LAW—TRIAL—TALESMEN—SHERIFF.

In the absence of the sheriff, the undersheriff is the proper officer to act in summoning talesmen: the fact that the officer has been active in his duty in assisting the prosecuting attorney is not ground for disqualifying him from summoning jurors to try the case, in the absence of any showing of interest or disqualification other than such official acts.

2. SAME—VOLUNTARY STATEMENTS—ADMISSIONS.

The evidence showing that respondent, charged with murder, voluntarily made harmful admissions after his arrest, in the presence of the chief of police and a court stenographer, who reduced a part of the statements to writing, it was not erroneous to admit testimony relating to such statements or admissions.

3. SAME—APPEAL AND ERROR—CONFESSION.

The refusal to strike out a part of the alleged statement was not prejudicial to the accused, when the testimony given by him upon the witness stand covered the same ground and was identical with it.

4. SAME—JURY—NEW TRIAL.

Where affidavits were filed after the conviction of a respondent, in support of the claim that one of the jurors was disqualified and that he had talked with one of the persons who was present at an assault, etc., occurring on the night of the murder and in which the accused and the deceased participated, but there was no evidence that the juror formed any opinion as to the merits of the prosecution and he expressed no opinion in regard to the guilt of the respondent, the trial court did not err in refusing to set aside the verdict.

5. SAME.

Respondent, who was convicted of manslaughter, was not entitled to have a verdict directed in his favor, upon evidence tending to show that he and his companions started out with the intention of committing an assault or other crime, that he was present at the attack upon

decedent, and actively participated in the events that led up to the assault, including a chase of the decedent prior to his murder.

6. SAME—TRIAL—CONDUCT OF PROSECUTING ATTORNEY.

While the statement to the jury by a prosecuting attorney that he believes the accused is guilty, has been *held* to constitute reversible error, it is not ground for reversal that the prosecutor stated on the trial of a prosecution for murder that he believed the testimony showed beyond all reasonable doubt that the respondent was guilty as charged; since it is, as a general rule, permissible to state what evidence convinces him and should convince the jury of respondent's guilt.

7. APPEAL AND ERROR—CRIMINAL LAW—CHARGE.

Errors assigned to the general charge of the court without referring to the portions which are claimed to be erroneous or designating the appropriate page or paragraph of the record, will not be considered.

8. SAME—EXCEPTIONS BEFORE SENTENCE—NEW TRIAL.

Where the trial court expressed an opinion that a motion for a new trial did not take the place of exceptions before sentence, as claimed on the argument, by the attorney for respondent, and the proper steps were not taken to raise the points in the way provided by the statute authorizing a review of the case by that method, the trial court did not err in overruling the alleged exceptions as frivolous and passing sentence before proceedings were taken to appeal the cause.

Error to Genesee; Wisner, J. Submitted June 12, 1914. (Docket No. 104.) Decided July 24, 1914.

Herbert Ponsford was convicted of manslaughter. Affirmed.

*Lee & Parker,* for respondent.

*Grant Fellows,* Attorney General, *Clifford A. Bishop,* Prosecuting Attorney, and *William W. Blackney,* Assistant Prosecuting Attorney, for the people.

McALVAY, C. J. Herbert Ponsford, Frank Caster, and Henry Van Koevering were informed against in

the circuit court for Genesee county for the crime of murder. After pleas of not guilty were entered they demanded and were granted separate trials. The trial of respondent resulted in a verdict of guilty of manslaughter, upon which a judgment was later pronounced. The case is before us for review upon a writ of error.

The facts surrounding this homicide, necessary to state, are as follows: On the night of December 6, 1913, the three respondents, Ralph Sova, deceased, and his brothers Edward and Emmett, together with 50 or more people, attended a birthday party at the house of Mr. Lauzon, who was a cousin of the Sovas, in the city of Flint, located between Hector and Wallace streets, near Thread lake, and spent the evening until quite late in dancing, card playing, and drinking beer. A man named Rebtoy was also present, and, as far as the record shows, was the only person who became intoxicated.

Between 12 and 1 o'clock in the morning of December 7th, after respondents, except Ponsford, and most of the guests had departed, Rebtoy seriously assaulted Ponsford in the kitchen, striking him several blows in the face, blacking his eyes, and causing his nose to bleed. Ralph Sova, deceased, who was in the front room, hearing the disturbance, went into the kitchen, separated Rebtoy from respondent, and held him, so that no further assault was made. Respondent, being told to leave, then took his hat and went away, going west to Saginaw street and then north on that street about three blocks to the house where Van Koevering lived, which is called the ice company's office in the record. This was the first of three dwellings on the west side of Saginaw street south of the bridge over Thread creek.

Seeing a light, he went upstairs to wash and clean himself, and found Van Koevering and Caster in bed. He informed them how he was hurt up at the dance,

when one of them said: "Let's go up and get them." Both then jumped out of bed, dressed, and the three immediately started downstairs, Ponsford in the lead. Turning north, when near the bridge they met a man (who afterwards proved to be Edward Sova) coming south.

Edward Sova had left the Lauzon house about 15 minutes after Ponsford, and, thinking his brothers had gotten ahead of him, he went up Saginaw street as far as the brewery. Not finding them, he turned back, and had gone south across the bridge when respondents met him. They did not give him any sidewalk, and, one of them assuming a hostile attitude, Sova, taking the middle of the road on the run going south, passed them. The three men at once started in pursuit. He soon stumbled and fell, and, getting up, ran on for some distance, until he fell into a ditch. Respondents were close upon him, and some of them began to throw beer bottles at him while in the ditch, which he warded off with his elbow, one striking him and breaking.

At this time, Ralph Sova, deceased, his brother Emmett, and Rebtoy, who had left the Lauzon house, were coming west on Hector street near Saginaw street, saw these three men chasing one south, and, hearing an outcry, recognized the brother's voice. They ran to Saginaw street, where they found Edward in the ditch just south of Hector street, being set upon by these men. Emmett testified respondent, who stood to one side, said to them, "Stand back, or I'll put a hole through you," placing his hand on his hip. Deceased went to Edward's assistance and rescued him from the other two respondents, and the two brothers started north with Edward ahead of them, Emmett and deceased walking side by side behind him. The three respondents followed six or eight feet behind, urging them to "get out," "beat it," etc., and swore at them.

They proceeded in this way until they came to the place where the path they followed crosses diagonally to the west side of Saginaw street. As they arrived at the west side of the street, Emmett Sova saw one of the respondents strike deceased apparently in the back, and saw deceased turn around, take a step toward his assailant, and strike at him. This occurred in front of the first and southernmost of the three houses before mentioned. He next saw his brother Ralph down, and the three respondents over him, as he expresses it, "in an awful commotion." He went to his brother's assistance, and, as he got to where he lay, one of the men struck him and knocked him down. As he was getting up another one came for him. He warded off the blow with his elbow, and the fight continued until he landed in the rear of the second house, whereupon respondents disappeared. He went back to where his brother was lying, and, finding his heart still beating, called to Edward to get an officer. Upon the arrival of the officer the man was pronounced dead, and the body was taken in charge.

Respondents went to Van Koevering's room, which was in the second house north of where the body was found, and went to bed, where they were found and arrested the next morning.

Edward Sova was also an eyewitness of the attack upon deceased. He saw him stagger as though struck, then turn around and throw up his hands to protect himself. At this juncture Edward was knocked down, and remembered nothing until he saw Emmett over the body of deceased and heard him call for help. A *post mortem* was held, which disclosed severe bruises upon the head and face of deceased, with the brain covered with blood clots, and also a fracture of the skull at the base of the brain.

Respondent was a witness in his own behalf. He admits that he was present and went with his core-

spondents from Van Koevering's room, and was with them from that time until after the tragedy occurred. He denies that he took any part whatever in an assault upon any of the parties or participated in any way in any violence committed.

It is admitted that the only persons present at the time deceased met his death were the respondent, the two men impleaded with him, and the three Sovas. The first error assigned and relied upon by respondent charges a fatal irregularity in drawing the jury.

During the course of the trial, in securing a jury, when it became necessary to summon talesmen, the sheriff not being present, the undersheriff, Mr. Crego, was directed by the court to perform that official duty. It is asserted that this was objected to by respondent on the ground that the undersheriff was not a disinterested person; that he had been engaged in assisting the prosecution, and was a material witness for the people. Our examination of the record does not disclose that any exception was taken at the time to the action of the court. In an affidavit made by respondent on a motion for a new trial appears a statement that such an objection was made and an exception taken to the order of the court, which is given as one of the reasons for granting the motion for a new trial. It also appears that the court considered the matter in giving his reasons for denying a new trial, and in doing so stated what occurred on the trial at the time. In this excerpt from the record the court further said that no objection was made to any jurors summoned by the undersheriff that they were not in all respects qualified to serve. No showing was made as to the disqualification of the undersheriff, except as above stated, nor upon cross-examination of this officer, who was sworn as a witness on the part of the people, did counsel for respondent make any attempt to show his interest or disqualification.

In the absence of the sheriff, the undersheriff was the proper officer for the court to call upon to summon talesmen. The fact that a sheriff or undersheriff has been active in his duty in assisting the prosecuting officer is not ground for disqualifying him from summoning jurors to try the case, in the absence of any showing of his interest and disqualification other than such official acts. The exact question has been passed upon by this court, and it has been so held in other jurisdictions. *People* v. *Summers,* 115 Mich. 537 (73 N. W. 818); *People* v. *Lalonde,* 171 Mich. 286 (137 N. W. 74); *State* v. *Tawney,* 83 Kan. 603 (112 Pac. 161); *State* v. *Jeffries,* 210 Mo. 302 (109 S. W. 614, 14 Am. & Eng. Ann. Cas. 524).

It was a matter in the discretion of the court which does not appear to have been abused.

Error is also assigned because the court permitted Chief of Police McCall to testify to oral statements made by respondent after his arrest on the ground of insufficient foundation laid therefor; and also in permitting part of a written statement taken by the court stenographer later to be admitted in evidence because no foundation was laid for it or showing made that it was voluntary.

It is in evidence that two statements were made by respondent, the one testified to by Mr. McCall being the first, made in his presence and the presence of the sheriff and his officers. We do not think the objection was meritorious. The testimony shows that the statement was voluntary.

The further objection to the first statement was that respondent made a statement directly afterward which was taken down by the court stenographer. This objection was also without merit, for the reason that the record shows it was not the same statement, but was made before the stenographer came. The foundation for the reception of the two statements was sufficient.

During the course of the reading of this statement taken by the court stenographer in evidence the following question appeared:

"*Q.* Now, Herb, I don't want you to avoid this thing. I want you to be absolutely straight about it on your own account. That is true. You better do it."

On account of the nature and language of this question the statement was objected to by counsel for respondent. The objection was sustained, and it was stricken out, together with all of the statement after it. That portion which preceded and which had been read was allowed to stand. The court, as soon as his attention was called to what he considered an improper question, by objection on the part of respondent, sustained the objection and struck out all the balance of the statement.

The contention is that the entire statement should have been taken from the consideration of the jury. We have read this statement, and, when it is compared with the testimony of respondent voluntarily given upon the trial, we find the statement taken by the stenographer, as far as it was allowed in evidence, identical with his testimony; therefore the refusal to strike it out cannot be considered as prejudicial to respondent.

Closely connected with the exception to the order of the court in directing the undersheriff to summon talesmen for a jury is the claim that a certain juror so summoned was discovered after the trial to be disqualified. The question was raised upon the motion for a new trial, by affidavits which were presented and passed upon by the court, and error is assigned upon the refusal of the court to grant a new trial on that ground. From the extended examination had upon his *voir dire* it appears that the juror was passed by the people and by respondent. The three affidavits on the part of respondent show that this juror, who

was a carpenter, came to the Lauzon house, and while there talked with Mrs. Lauzon in regard to the assault made by Rebtoy upon respondent on the night of the dance. They do not show that he ever had or expressed any opinion in regard to the guilt or innocence of respondent. Opposing affidavits showed that Undersheriff Crego did not know this juror when he summoned him; that the juror was acquainted with Lauzon, and was at the house for the purpose of returning a jackscrew which he had borrowed; that at the time he did not know the charge against respondent; and that the facts of the case were not discussed. The court found, as a matter of fact, that this juror had not formed or expressed an opinion in respect to the guilt or innocence of respondent and was not disqualified, and denied the motion for a new trial; in which finding, after an examination of the facts then before the court, we concur.

Two of the assignments of error are as follows, and will be considered together:

"(1) That the court erred in submitting said cause to the jury; and the verdict is contrary to the undisputed testimony; and there is no evidence in the case that warranted the jury in bringing in a verdict of manslaughter."

"(2) That the court should have instructed the jury to acquit the respondent, as requested by the said respondent, as there was no evidence that he struck any blow or encouraged any one else to do so, or committed any assault."

Both of these requests are based upon the contention made for respondent that there was no evidence, direct or circumstantial, to connect him with the homicide or to show that he was in any way responsible for the death of Ralph Sova, and that the testimony shows the contrary; that the fight, in which he took no part, was brought about suddenly; that there was no testimony in the record to show that he struck a blow or encouraged anybody else to do so.

While it is true that there is no testimony showing any specific blow struck by respondent during the time covered by the facts stated, yet from the statement of facts we have given, including respondent's testimony, it appears that there is evidence tending to show the purpose for which these three left Van Koevering's room. He admits that he was with them from that time, both while chasing the man down the street until he fell into the ditch, and on the return to the place where the homicide was committed. There is evidence in the case tending to show that this purpose was carried out and of respondent's active participation in all that occurred, up to and including the fatal assault by the three men upon the deceased. The court was therefore not in error in refusing respondent's request for a directed verdict of not guilty.

Error is also assigned upon a statement made by the assistant prosecutor, who opened the case upon his argument to the jury. All that the record shows in regard to the matter is as follows:

"In his address to the jury, Mr. Blackney, assistant prosecuting attorney, used this language:

"'We believe under the testimony in this case, after you weigh it carefully and well, after you think of all the incidents and circumstances in evidence in this case, after you have weighed the testimony and the manner of respondent in this case, which you have seen while you have seen him upon the witness stand, I believe, gentlemen of the jury, the testimony shows beyond all reasonable doubt that the respondent Herbert Ponsford is guilty in manner and form as the people have in their information in this case charged.'

"*Mr. Lee* (respondent's counsel): To that we take an exception. A very decided exception."

The record does not show that the court's attention was directed to this exception, nor does it appear that the court was requested to charge the jury with reference to it, although there was ample opportunity

to do so. Error is assigned only upon the last four lines of the above statement.

This court has held in *People* v. *Quick,* 58 Mich 321 (25 N. W. 302), that the statement of a prosecutor upon his official oath that he believed the respondent guilty as charged was reversible error. The same was also held in *People* v. *Dane,* 59 Mich. 550 (26 N. W. 781), where the prosecutor made the positive statement to the jury that he knew that the respondent was guilty. As stated in the latter case:

"It is improper for one occupying the position of the prosecuting officer to make a statement to the jury of a fact, as of his own knowledge, which has not been introduced in evidence under the sanction of an oath."

In the cases cited, and other like cases, such statements are held to be prejudicial and erroneous, because they are not in the nature of conclusions based upon the facts in evidence. From the language in the instant case, read as a whole, the prosecuting officer was drawing his conclusions from the evidence in the case, and so stated at great length. In fact, it was an argument addressed to the jury to come to a verdict only after weighing all of the evidence carefully and well, and argued that from the evidence he believed respondent guilty. This court has repeatedly distinguished between cases where the language used was of the same character as in the instant case and the cases above cited, and in doing so said:

"This court has repeatedly expressed itself as to the impropriety of the prosecuting attorney expressing to the jury his personal opinion as to disputed facts (citing *People* v. *Quick, supra; People* v. *Dane, supra;* and *People* v. *McGuire,* 89 Mich. 64 [50 N. W. 786]); but it has never been held that he may not say to the jury that certain testimony in the case impresses him with the belief that the respondent is guilty, and why it so impresses him (citing *People* v.

*Welch,* 80 Mich. 616 [45 N. W. 482]; *People* v. *Hess,* 85 Mich. 128 [48 N. W. 181], and quoting from the latter case as follows:

"'It is not proper for the prosecuting officer to tell the jury that he believes the defendant guilty, as his belief is not evidence in the case; but he has the right to argue from the testimony that the defendant is guilty, and to state to them what evidence before them convinces him, and should convince them, of such guilt. To deny to a prosecuting officer this privilege would be to deny to him the right to place before the jury the logic of the testimony which leads his mind to the inevitable conclusion of guilt, and which he has the right to presume will lead them to the same conclusion if they view it as he does.'"

*People* v. *Ecarius,* 124 Mich. 616, 624 (83 N. W. 628).

The practice by prosecuting officers of stating their beliefs as facts has never been favored by this court, and such officers should use great care in avoiding such statements. The statement complained of was not prejudicial.

Errors are assigned upon the refusal of the court to give six certain requests to charge on the part of the respondent. From our examination of these requests and of the charge as given it will be sufficient to make the general statement that those which were not included in the general charge were properly refused.

Several errors are assigned to the general charge of the court without specifying the portions of the charge referred to, or designating the pages of the record or paragraphs of the charge. This court has not favored such practice, and cannot make examination of the whole charge in order to determine which portion will fit any particular assignment of this character. *People* v. *Sanders,* 139 Mich. 442, 446 (102 N. W. 959).

Error is assigned on the ground that the court refused to give respondent an opportunity to bring the

case to this court upon exceptions before sentence.
The record contains no motion or other statement to
that effect made on the part of respondent. We find,
however, in his reasons for denying the motion for a
new trial a statement by the court that on the hear-
ing of that motion counsel for respondent stated that
it was his understanding that it took the place of ex-
ceptions before sentence under the statute. The court
expressed his opinion that such was not his under-
standing of the practice, and said, if it were, he held
that all such exceptions and reasons were frivolous,
and constituted no ground for delaying sentence.
There is nothing in the record to show that the statute
relied upon was complied with in any respect. The
motion for a new trial was made March 2, 1914. It
was denied March 7th, and sentence pronounced. The
proposed bill of exceptions was filed March 17th and
settled April 1st.

We have examined the charge of the court as given
to the jury, and are satisfied that the case was sub-
mitted without prejudicial error, and that none of
the many reasons upon which the motion for a new
trial was based were meritorious, and that the court
properly denied such motion.

The conviction and judgment of the circuit court
are affirmed, and the cause will be remanded to the
circuit court for Genesee county for the execution of
the judgment.

BROOKE, KUHN, STONE, OSTRANDER, BIRD, MOORE,
and STEERE, JJ., concurred.