## THE PEOPLE v. FRANK UMLAUF.

*Criminal law—Giving false pedigree of an animal—Evidence.*

1. An unregistered account of the strain of an animal, especially where it, as well as its ancestry, has changed hands a number of times, must necessarily be based upon hearsay.

:2. *Actual knowledge* and intent to defraud must be shown in order to warrant the conviction of a respondent under Act No. 9, Laws of 1887 (3 How. Stat. § 9209*d*), which makes it a criminal offense to give knowingly a false pedigree of any animal, with intent to defraud.

Exceptions before judgment from Macomb. (Canfield, J.) Argued June 17, 1891. Decided November 13, 1891.

Information under Act No. 9, Laws of 1887, for giving a false pedigree of a horse, with intent to defraud. Conviction set aside. The facts are stated in the opinion.

*Crocker & Crocker,* for respondent.

*A. A. Ellis,* Attorney General, and *James G. Tucker,* Prosecuting Attorney, for the people.

McGRATH, J. The defendant was convicted upon an information which charged that he,—

" With intent to cheat and defraud one George Bacon, and obtain from him, the said George Bacon, the sum of $300 in money as the price of a certain stallion, then and there owned by him, said Frank Umlauf, and which he, the said Frank Umlauf, then and there offered for sale to the said George Bacon, said stallion being then and there named 'Frank,' did knowingly give to him, the said George Bacon, a certain false pedigree of the said bay stallion Frank, then and there owned as aforesaid by the said Frank Umlauf, which said false pedigree was printed upon a certain card given to the said George Bacon by the said Frank Umlauf, and was as follows:

" ' FRANK.

" ' Bay stallion, foaled on June 27, 1882, by Bill Weller; he by Scotia, the sire of Ned Weller, 2:29½; Roachmaine, 2:22; Jackson (stallion), 2:40½; dam Clydesdale, sired by Clydesdale Jock, no record; by Ricks' Royal George, 2:27½; by St. Lawrence, Jr.; by St. Lawrence.'

" He, the said Frank Umlauf, then and there well knowing the said pedigree so given by him to the said George Bacon of the said stallion Frank to be false."

The statute (Act No. 9, Laws of 1887, 3 How. Stat. § 9209*d*) under which the conviction was had reads as follows:

" SECTION 1. *The People of the State of Michigan enact,* That every person who knowingly or designedly by means of any false pretense shall obtain from any club, association, society, or company for improving the breed of cattle, horses, sheep, swine, or other domestic animals, a certificate of registration of any animal in the herd register or other register of any such club, association, society, or company, or a transfer of any such registration, and every person who shall knowingly give a false pedigree of any animal, with intent to defraud, upon conviction thereof, shall be punished by imprisonment in the State prison for a term

not exceeding three years, or in a county jail for a term not exceeding one year, or by a fine not exceeding one thousand dollars, or by both such fine and imprisonment, in the discretion of the court."

The defendant testified that he did not know how the horse Frank was bred; that one Peltier told him that he (Peltier) knew all about the horse, and had known him since he was a year old.

"I knew nothing about it. I cannot read. I know that there is a picture of a horse on the card; that is all I know. I suppose the pedigree handed me was right. I don't know whether it is right or not. I supposed it was right."

It appeared that one Tripp had at one time owned the horse, and had bought it from one Tebo; that Tripp had handled the horse for defendant, and that it was through Tripp that Umlauf purchased the horse from one Allor.

George Bacon, the complaining witness, testified that at the time of the purchase of the horse witness asked defendant if he had a pedigree of the horse, and he said, "Yes."

"He stepped behind the counter, got it, and gave it to me. I asked if it was a true pedigree, and he said it was."

It further appeared that eight or ten cards of the kind set up in the information were printed at the Monitor office; that the copy from which they were printed was in the handwriting of one Gibbs, and was brought to the office by Gibbs. Gibbs testified that he wrote the copy at Tripp's direction; that Tripp gave him the pedigree of the horse, and he simply did the clerical work; that Tripp referred him to one Peltier, and witness asked Peltier about certain points in the breeding, and witness used the information; that he relied upon Tripp and Peltier, and talked with no one else; that he had no talk with Umlauf about it, except that afterwards he met

him, and Umlauf asked him if he saw Tripp about some bills for his horse, and "I said, 'Yes, they are printed;' and he paid me for them. That is all the conversation I ever had with him." Tripp is called, is shown the card, and says:

"Well, part of this is, as near as I can judge, right, and the balance I don't consider I can give you. I traded and got the horse myself, and I got the horse with the pedigree I gave Gibbs. I got it from Charles Tebo. He told me just the same as I told Gibbs. I told him the way he told me. Tebo told me he was from St. Lawrence, and out of a Clydesdale and Hambletonian mare. Umlauf was with me when I done the trading. He held the horse, while I went to look at the stallion and hitch him up. I didn't give Gibbs a copy. I got the facts about the pedigree of the horse from Tebo. I did not get them from Umlauf. Umlauf knew nothing about the pedigree of the horse. I told Gibbs the same as I told you now; and if Umlauf had anything to do with the pedigree, I don't know anything about it."

One Allor testified that—

"The day Umlauf and Tripp came down and traded with me I told them the sire of Frank was the Bill Webb horse. I did not give them any such information as that on the card. Frank was foaled in the spring of 1880. When Tripp and Umlauf came down there, Tripp done the talking. Umlauf did not say a word about the trade. The horse was a good horse, worth $300 for breeding, when I let him go."

Alva Bacon, son of complaining witness, testified that defendant told him that the card was a true pedigree of the horse. One Cottrell testified that Ned Weller never had a record of $2:29\frac{1}{2}$, nor had Roachmaine one of $2:22$, but both had quite a local reputation. All this testimony except that of the defendant was brought out by the prosecution. It further appeared that Jackson, Scotia, and St. Lawrence were horses of local reputation, and one witness testified that there was no special breeding in any of the horses named; that not a single horse

on the list would be considered of the least value in the world by horsemen, except as a common all-work horse; that there is not a standard horse's name in all the lot; that Ned Weller was just a good roadster.

Upon this record it does not appear that there was any testimony tending to show that defendant knowingly gave a false pedigree of the horse with intent to defraud. It appeared that the horse was sired and foaled in the immediate neighborhood, and that several of the horses named in the card were neighborhood horses of local reputation. The horse in question was nine years of age, and had passed through several hands before reaching defendant. There was no record kept of his lineage. It rested in memory alone. Tripp claims to have obtained his information from Tebo, and Allor claims to have informed Tripp. Gibbs obtained his information from Tripp and Peltier, and Tripp and Gibbs do not agree. Umlauf did not contribute any of the matter put into the card. He could not read it when printed, and the proofs do not show that he knew what representations the card contained. In an action to recover back the purchase money it might be sufficient to show that the information contained in the card was false, without proof of either knowledge of its falsity or intent to defraud, but here both knowledge and intent must be shown; and, while the intent to defraud might be inferred from actual knowledge, it cannot be presumed in the entire absence of proof of knowledge. It may be true that Allor "told them" that the sire of Frank was the Bill Webb horse, and that he was foaled in the spring of 1880, although it may well be doubted whether that information came home to Umlauf; yet it was not shown that he had any knowledge that the card contained any other representations.

An unregistered account of the strain of an animal,

especially where that animal, as well as its ancestry, has changed hands a number of times, must necessarily be based upon hearsay, and the Legislature has wisely made guilt dependent upon actual knowledge and intent to defraud.

The conviction must be set aside, and a new trial ordered.

The other Justices concurred.