PEOPLE *v.* KENNEDY.

1. CRIMINAL LAW—INFORMATION—IMMORAL ADVERTISEMENT.

An information based on Act No. 62, Pub. Acts 1911 (2 How. Stat. [2d Ed.] § 5299), charging in the language of the first section of the statute that defendants did unlawfully advertise in a certain pamphlet annexed to the information "the treating and curing of venereal diseases, the restoration of lost manhood and lost vitality and vigor, which said advertisement contained expressions synonymous with the words 'lost manhood,' 'lost vitality and vigor,'" sufficiently apprised the defendants of the nature of the offense charged.

2. SAME—INDICTMENT AND INFORMATION—SURPLUSAGE.

Matters included in the pamphlet that did not relate directly to the charge of the information might be treated as surplusage, and did not affect the validity of the pleading.

3. EVIDENCE—CORRESPONDENCE—SUFFICIENCY OF PROOF.

Testimony of a distributing agent that he had received from respondents a letter, offered in evidence, that it contained a blank affidavit, also introduced, which mentioned the names of respondents, to be filled out to prove the distribution of certain pamphlets or advertising matter

in behalf of respondents, that the witness had received the letter from them in reply to one written by him, with testimony identifying the advertising matter and showing its distribution, *held*, to warrant the admission of letter and blank affidavit in evidence.

4. SAME—MEDICAL TESTIMONY.

Respondents accused of publishing advertising matter in contravention of Act No. 62, Pub. Acts 1911 (2 How. Stat. [2d Ed.] § 5299), were not prejudicially affected by testimony of a physician explaining the phrase "venereal diseases," and that the terms "lost manhood" and "lost vigor" had no medical significance.

5. CRIMINAL LAW — ADVERTISING MATTER — STATUTES — INSTRUCTIONS TO JURY—TRIAL.

It was proper to submit to the jury the letter offered in evidence, with instructions that it tended to show that the respondents proposed to send, for the purpose of distribution, certain pamphlets, and that the testimony tended to show that the pamphlets were received and distributed as charged, that the question whether the pamphlet violated the statutes was for the jury, and whether the language used was unlawful or synonymous with the prohibited phrases.

6. SAME—QUESTIONS OF LAW AND FACT.

While the court might have instructed the jury that the advertising matter distributed by respondents was a violation of the law, the finding of the jury that the respondents were guilty determined the point against them, and the submission of the question was not prejudicial to appellants.

7. SAME—ELECTION OF COUNTS.

The State could not be compelled to elect between two counts, one of which charged that respondents unlawfully advertised to treat and cure venereal diseases, etc., as set forth in a pamphlet annexed to the information, the other count alleging that the respondents advertised under their firm name that they were specialists in such diseases, as shown by said pamphlet.

8. SAME.

But where the prosecuting attorney elected to proceed under the first count, there was no ground of complaint.

176 MICH.—25.

9. CONSTITUTIONAL LAW.
  Said Act No. 62, Pub. Acts 1911, is valid and constitutional, and the court should give effect to the legislative purpose by so construing the language as not to render it invalid.

Exceptions before sentence from Wayne; Hosmer, J. Submitted June 12, 1913. (Docket No. 119.) Decided July 9, 1913.

James D. Kennedy and Charles J. Kennedy were convicted of a violation of Act No. 62, Pub. Acts 1911 (2 How. Stat. [2d Ed.] § 5299). Affirmed.

*Grant Fellows*, Attorney General, *Hugh Shepherd*, Prosecuting Attorney, and *Harry B. Keidan*, Assistant Prosecuting Attorney, for the people.

*Bumps & Bishop*, for respondents.

STONE, J. The respondents were charged in the information, which followed the complaint and warrant, with a violation of certain of the provisions of Act No. 62 of the Public Acts of 1911 (2 How. Stat. [2d Ed.] § 5299), entitled:

"An act to prohibit certain classes of immoral advertising and provide punishment for violators thereof."

Section 1 of the act, in so far as it applies to the first count in the information, is as follows:

"Any person who shall advertise in his own name or * * * firm or pretended firm, * * * in any * * * pamphlet, circular * * * an advertisement of the treating or curing of venereal diseases, the restoration of 'lost manhood' or 'lost vitality or vigor' * * * shall be guilty of a misdemeanor," etc.

Respondents were examined upon said charge and were bound over to the Wayne circuit court for trial.

The first count of the information charged that the respondents —

"To wit, on the 10th day of August, A. D. 1912, at the city of Plymouth, in said county, unlawfully did advertise under the firm name and style of Drs. Kennedy & Kennedy, in a certain pamphlet and circular, an advertisement of the treating and curing of venereal diseases, the restoration of lost manhood and lost vitality and vigor, which said advertisement contained expressions synonymous with the words 'lost manhood,' 'lost vitality and vigor,' and which said advertisement is in words and figures as follows, to wit:" (Here was annexed the entire of the printed pamphlet of 20 printed pages.)

The second count of the information charged respondents, at the same time and place, with having unlawfully advertised under their firm name that they were specialists in diseases of the sexual organs and diseases caused by sexual vices, self-abuse, and diseases of like kind, by then and there distributing and circulating certain pamphlets and circulars, in words and figures following, to which count the same printed pamphlet was annexed as to the first count.

Upon arraignment respondents stood mute, and a plea of not guilty was entered for each. Upon the trial both respondents were, by the jury, found guilty under the first count of the information; the prosecutor having elected to go to the jury upon the first count only, during the charge of the court.

The case has been brought here for review on exceptions before sentence, and there are ten assignments of error. The several assignments of error have been discussed by counsel for respondents under the following heads:

I. Defects in the information.

(a) That the information charges no offense under the laws of this State.

(b) That the information contains no statement of facts constituting any specific offense.

*(c)* That the information does not inform the accused of the nature of the offense intended to be charged.

II. Errors in admission of evidence on the trial.

*(a)* That Exhibits 1 and 2, consisting of a letter and blank form of affidavit purporting to come from respondents, were improperly admitted in evidence.

*(b)* That Exhibits 3, 4, 5, and 6, being copies of the pamphlet attached to the information, were improperly admitted in evidence.

*(c)* That the testimony of Dr. James E. Burgess, as set forth in assignment of error No. 3, was improperly admitted.

III. Errors in the charge of the court.

*(a)* That the court erred in charging as follows:

"The letter has been offered in evidence. The testimony of the letter tends to show, if written by the defendants, that they proposed to send for the purpose of distribution certain pamphlets to Plymouth, and the testimony of the witness would tend to show, and you may find that it does show, that the pamphlets were so received and distributed as you have heard the testimony."

*(b)* That the court erred in further charging the jury as follows:

"I think it is for you to say whether that pamphlet is a violation of the provisions of this act, and whether it does in substance and in fact advertise them as specialists mentioned in the information, and whether in fact also the language there is not equivalent to the expressions prohibited by the statute, lost manhood, lost vitality or vigor."

IV. Election of counts.

*(a)* That the court erred in not compelling the prosecuting attorney to elect which count he would go to the jury on when requested by respondents.

*(b)* That the court erred in not explaining to the jury what part of his charge would not apply to the

first count and what part of the testimony should be withdrawn from the consideration of the jury.

V. That the act in question is unconstitutional and void.

1. Counsel for respondents state in their brief that the respondents were examined upon the charge before the examining magistrate, and the count upon which they were convicted charged them with advertising in a certain pamphlet or circular, a copy of which was annexed to the count. We do not think that it can be claimed that the respondents were surprised or that they were not sufficiently apprised of what they were to meet. The evidence tended to show that the entire pamphlet was issued by respondents; and an inspection of it satisfies us that in its entirety it is an advertisement of the healing and curing of venereal diseases, the restoration of lost manhood and lost vigor, as charged in the count. We think that the general rule that, in charging or pleading offenses created by a statute, it is sufficient to describe the offense in the words of the statute, applies here, and that the information was sufficient. *Rice* v. *People,* 15 Mich. 9; *People* v. *Butler,* 122 Mich. 35 (80 N. W. 883); *People* v. *Kennedy,* 105 Mich. 75 (62 N. W. 1020); *People* v. *Comstock,* 115 Mich. 305-313 (73 N. W. 245); *People* v. *Glazier,* 159 Mich. 528-537 (124 N. W. 582); *People* v. *Quider,* 172 Mich. 280 (137 N. W. 546); *State* v. *McKee,* 73 Conn. 18 (46 Atl. 409, 49 L. R. A. 542, 84 Am. St. Rep. 124). In the *Quider Case,* Justice STEERE, speaking for this court, said:

"In criminal proceedings the accused is entitled to demand and know the nature and cause of the accusation against him. Beyond that, technical elaboration of pleadings fails to subserve the ends of justice, and becomes but ingenious pitfalls for one side or the other. In charging the offense, a detailed recital of the evidence by which it will be established is not required. Such facts must be averred that, if admitted,

would constitute the offense and establish the guilt of the accused."

*Moose* v. *State*, 49 Ark. 499 (5 S. W. 885); *People* v. *West*, 106 N. Y. 293-295 (12 N. E. 610, 60 Am. Rep. 452).

Even though some of the matters in the pamphlet do not relate directly to the matters charged against the respondents, such matters may be rejected as surplusage. As was said in *People* v. *Laurence*, 137 N. Y. 517, 524 (33 N. E. 547, 549):

"It is not a legal ground of attack upon this indictment that it contains more than was necessary under the provisions of the Code. It has always been the rule that surplusage no more vitiates an indictment than a pleading in a civil action. *Lohman* v. *People*, 1 N. Y. 379 (49 Am. Dec. 340); *Dawson* v. *People*, 25 N. Y. 399."

We have examined the numerous cases cited by respondents' counsel and think them readily distinguishable from the instant case. There are peculiar reasons, applicable to offenses of the nature here charged, for not setting out in full all of the obscene matter contained in a publication. The early case of *People* v. *Girardin*, 1 Mich. 90, is instructive upon this subject.

The case of *Commonwealth* v. *McCance*, 164 Mass. 162 (41 N. E. 133, 29 L. R. A. 61), cited by respondents' counsel, has been examined by us, and it appears that in that case the indictment was held bad because it neither contained a copy of the obscene matter complained of nor any reference or description thereto, but simply named the book containing the matter. The book offered in evidence in that case contained 710 printed pages. It was known as the "Decameron of Boccaccio" and contained ten novels or stories for each of ten days' entertainment. Of these 100 novels, only six were introduced in evidence by the commonwealth, and the court said:

"We cannot know what parts of the book the grand jury found to be obscene, indecent, and impure, and we know of no way whereby from the indictment the defendant could know before the trial what parts of the book would be put in evidence by the commonwealth."

The court then quotes from *Commonwealth* v. *Holmes*, 17 Mass. 336, as follows:

" 'The second and fifth counts in this indictment are certainly good for it can never be required that an obscene book and picture should be displayed upon the records of the court, which must be done if the description in these counts is insufficient. This would be to require that the public itself should give permanency and notoriety to indecency, in order to punish it.' This decision has been followed by many of the courts in this country" —citing, among other things, *People* v. *Girardin, supra.*

Neither do we think the case is controlled by *State* v. *Smith*, 17 R. I. 371 (22 Atl. 282), cited by respondents' counsel. It seems to be held in Rhode Island that it is not sufficient to charge such an offense in the language of the statute.

We are of opinion that the first count in this case, the pamphlet annexed being a part thereof, is sufficient in the law to apprise the respondents of the charge against them. To advertise in a pamphlet is to give public notice by such means. Here the whole advertisement is set out according to its tenor.

2. It is contended that Exhibits 1 and 2, consisting of the letter and blank form of affidavit, were improperly admitted in evidence.

Charles W. Pullen, a witness sworn on behalf of the people, testified that he lived at Milan, Mich., and was in the distributing business, manager of the Redmond Distributing Company, distributing advertising matter. He was asked if he had any correspondence with the respondents. After the discussion of objections raised by respondents' counsel to any evi-

dence in the case because of defects in the information and the overruling of that objection, the witness answered that he did have correspondence with the respondents. He stated when he received the first letter from them, and stated that it was about August 1st. He was then shown Exhibit 1 and asked if that was a letter which he had received from the respondents, and he answered in the affirmative. That letter was received in evidence under the general objection that it was incompetent, immaterial, and irrelevant. The letter read in evidence, omitting the printed heading, was as follows:

"DETROIT, MICH., Aug. 5, 1912.
"THE REDMOND DISTRIBUTING AGENCY,
                    "Milan, Mich.
"Dear Sirs:

"In reply to your recent letter let us say that we will send 1,000 booklets to Plymouth by express, 1,000 to Dundee by express and 2,500 by freight to Milan, instead of sending 500 to Clinton, we are sending 1,000 to Dundee.

"As soon as the distributing is done, have the enclosed affidavit blank filled up and sworn to, for which we allow 50 cents for expense, return it to us and we will forward your check.

                    "Very truly yours,
                    "DRS. KENNEDY & KENNEDY."

Exhibit 2 was the blank affidavit accompanying the letter and reads as follows:

"No.                   Sworn Statement of
    "Distributing Agent for Drs. Kennedy & Kennedy
"City of
"County of
"State of
          "Town
          "County
          "State     being duly sworn deposes and says:
"1st. That he has been acting as the agent of     has done the distributing of certain booklets as advertising matter for Drs. Kennedy & Kennedy within the following territory: [Then there are five blank lines.]
"2. Between     date and     date 191
"3. That he distributed     number of booklets, rate dollars     per M.

"4. That said distributing has been faithfully done and in strict compliance with the instructions contained in the application for agency signed by me.

"5. That he did not employ, hire or engage any person under 18 years of age to distribute any of said booklets and none of said booklets were intentionally or negligently wasted or destroyed by this deponent, or by any other person, to his best knowledge and belief.

"Futher deponent saith not.

"................., Agent or Distributor.

"Subscribed and sworn to before me this ................. day of ................., 191..

"................., Notary Public.

"          County          State."

This witness further testified that he had an agent at Plymouth, Mich., by the name of Alton Richwine, but witness did not see the pamphlets that his agent distributed at Plymouth.

Alton Richwine testified, in substance, that he lived at Plymouth, Wayne county; that he was nearly 17 years old; that during vacation from school he had "peddled these bills" (that is, distributed some pamphlets in the township of Plymouth for the Redmond Distributing Company that Mr. Pullen was connected with); that he distributed them at the request of Mr. Pullen; that he distributed 600, a few days prior to the 15th of August, around the 10th. He was then shown Exhibit 3, which was a copy of the pamphlet attached to the information, and identified it as like those he distributed in the township of Plymouth; he testified that he distributed them from house to house and placed them on the porches and sometimes in farmers' rigs; that these pamphlets were delivered to him at Plymouth; and that they came by freight from Milan.

Other witnesses testified and were shown other exhibits identical in appearance with the pamphlet attached to the information; they testified that they

found them at their houses and on their porches at about the time charged in the information.

Another witness testified that he knew the respondents and had known them for some years, and knew their place of business in the city of Detroit at Michigan and Lafayette, the Triangle, and Griswold, "as they call it." It may be here stated that the pamphlet received in evidence and attached to the information, upon the inside front cover, contained the following words, "Drs. Kennedy & Kennedy, corner Michigan & Griswold streets, Detroit, Michigan," below which is the cut of a building, there appearing upon its front the name "Drs. K. & K.," below which is the following: "Located in our own office building cor. Michigan, Griswold and Lafayette Sts."

It will be observed that the letter above copied states that it is "in reply to your recent letter." We are of opinion that, in connection with the other evidence, this letter was admissible in evidence under the rule stated in *People* v. *Hammond*, 132 Mich. 422, 425-427 (93 N. W. 1084). And in the same connection, we think that the inclosure, the blank affidavit, was properly received in evidence.

In this connection further objection was made to the evidence of Dr. James E. Burgess, a witness on behalf of the people, who testified as to what was meant in medicine by the term "venereal diseases," and stated that a venereal disease was a disease of the venereal organs, describing them; and also testified that the terms "lost manhood" and "lost vigor" had no medical significance. We are unable to see wherein the respondents were prejudiced by the testimony of · Dr. Burgess. *Strang* v. *People*, 24 Mich. 1-9.

3. We have examined the charge of the court in the instance complained of in the seventh assignment of error. We think that the letters were properly before the jury, and that the instruction as to their contents was properly submitted.

As to the eighth assignment of error, we think the court might well have said to the jury that the pamphlet in evidence was a violation of the provisions of this act. He left it, however, to the jury. They, having convicted the respondents, necessarily found that the pamphlet was a violation of the act. It should be noted that, at the time this portion of the charge was given, the prosecuting attorney had not elected to go to the jury upon the first count alone, and both counts were then before the court and jury.

4. The election of counts. We think that under our own authorities the case might well have been submitted to the jury upon both counts in the information, and that the people should not in such a case be compelled to elect between the counts. *Van Sickle* v. *People,* 29 Mich. 61; *People* v. *Sweeney,* 55 Mich. 586 (22 N. W. 50) ; *People* v. *McDowell,* 63 Mich. 229 (30 N. W. 68) ; *People* v. *Dyer,* 79 Mich. 480 (44 N. W. 937) ; *People* v. *Summers,* 115 Mich. 537 (73 N. W. 818).

The prosecutor, however, elected to go to the jury on the first count. There is nothing here of which the respondents can complain, as it appears that the court, upon the election having been made, charged the jury as follows:

"Very well, gentlemen of the jury, I think under those circumstances, the election having been made to go only on the first count, of course the question in this case is whether this pamphlet does *advertise* the cure of venereal diseases, the restoration of lost manhood, and lost vitality and vigor."

5. We are unable to agree with counsel for the respondents that the act in question is unconstitutional. The first section of the statute describes the offenses charged in the information in the language we have given. Section 3 of the act provides as follows:

"It is further enacted that any advertisement found

in any newspaper, pamphlet or circular containing the words 'lost manhood,' 'lost vitality or vigor,' or other expressions synonymous therewith, shall be *prima facie* evidence of the guilt of the party or parties subscribing to the said advertisements, their agents or representatives, and the same penalty shall apply to the publishers of papers containing the same as prescribed in section one."

It is the duty of the court to give effect to a legitimate legislative purpose plainly indicated, if it can reasonably be done, and not construe language so as to invalidate an act where the language is fairly susceptible of a construction consistent with validity. The act appears to be a reasonable police regulation.

The court in its charge to the jury, instead of using the word "synonymous," left it to the jury to find "if the language there is not equivalent to the expressions prohibited by the statute, 'lost manhood,' 'lost vitality or vigor.' "

Counsel for respondents cite the case of *Hewitt* v. *State Board of Medical Examiners*, 148 Cal. 590 (84 Pac. 39, 3 L. R. A. [N. S.] 896, 113 Am. St. Rep. 315, 7 Am. & Eng. Ann. Cas. 750). In that case the statute provided that "all advertising of medical business in which grossly improbable statements are made" should constitute unprofessional conduct, for which the medical examiners might revoke the certificate; and the act did not define what statements should be "grossly improbable," and the court there held that the statute left it to the whim or caprice of the medical examiners without any standard for their guidance, and that it was too indefinite and uncertain to be enforced by the revocation of the physician's certificate and was void. We think that case readily distinguished from the instant case. The words "lost manhood" and "lost vitality and vigor" are ordinary words which could be readily understood by the jury, and it was properly left to them to say whether the

publication complained of contained words that were synonymous with those terms or equivalent to those terms. A perusal of the pamphlet in evidence shows that respondents carefully avoided the use of the words "lost manhood," "lost vitality and vigor," but they used words and phrases that are just as effective and as well understood as the words mentioned in the statute.

The language used by the supreme court of errors in *State* v. *McKee,* 73 Conn. 18, 31 (46 Atl. 409, 414 [49 L. R. A. 542, 84 Am. St. Rep. 124]), is appropriate here:

"The gist of the statutory offense is the massing of these immoralities in one publication for circulation, and demands that the paper shall be mainly or principally devoted to the publication of such material. The law cannot be evaded by intermingling other material, whether for the purpose of evasion or of securing attention to the main subject-matter, so long as the principal resulting effect is the circulation of this massed immorality; but that main result must appear, or the offense is not committed. * * * The court properly left to the jury the determination, as a question of fact, whether the papers in evidence were thus devoted to the publication of material claimed to be within the statutory description."

In *Commonwealth* v. *Buckley,* 200 Mass. 346 (86 N. W. 910, 22 L. R. A. [N. S.] 225, 128 Am. St. Rep. 425), which was an indictment charging the defendant with selling a book containing obscene, indecent, and impure language, manifestly intending to corrupt the morals of youth, the court said:

"The defendant strongly contends that the judge should have defined at greater length than he did the terms 'obscene,' 'indecent,' 'impure,' and 'manifestly.' While it is true perhaps that by illustration or the use of synonyms the judge might have explained more fully the meaning of these' terms, still it is to be remembered that they are not technical terms. They are common words and may be assumed to be under-

stood in their common meaning by an ordinary jury. So far as the judge undertook to define we see no error, and we cannot say as matter of law that his failure to define more at length was erroneous in law or prejudicial to the defendant."

We find no reversible error in the record, and the conviction of respondents is affirmed, and the case will be remanded to the circuit court for judgment.

STEERE, C. J., and MOORE, MCALVAY, BROOKE, KUHN, OSTRANDER, and BIRD, JJ., concurred.