MITCHELL FAMILY PLANNING IN-
CORPORATED, a Michigan Cor-
poration, et al., Plaintiffs,

v.

CITY OF ROYAL OAK, a Municipal
Corporation, et al., Defendants.

Civ. A. No. 37227.

United States District Court,
E. D. Michigan, S. D.

Jan. 5, 1972.

David M. Fried, Lampert & Fried, Southfield, Mich., for plaintiffs.

Allan G. Hertler, Royal Oak, Mich., for defendants.

## OPINION AND ORDER

PHILIP PRATT, District Judge.

This action was instituted on October 12, 1971, by an Order to Show Cause based on plaintiffs' complaint praying that City Ordinance No. 71–10 of defendant City of Royal Oak be declared unconstitutional and that defendants be enjoined from enforcing that ordinance.

At the hearing held on October 18, 1971, pursuant to the above-mentioned order, counsel agreed that the facts involved were clear and undisputed; a stipulation of facts was filed on October 29, 1971.

Thereafter, only questions of law being involved, the matter was submitted on respective motions for summary judgment. The positions of plaintiffs and defendants were extensively briefed and final oral arguments were taken on December 12, 1971. A preliminary injunction was unnecessary because the defendants agreed not to enforce the ordinance pending the decision of the Court.

The pertinent facts based on the stipulation (which is incorporated herein by reference) may be briefly stated. Plaintiff Martin Mitchell is the President of plaintiff Mitchell Family Planning, Incorporated, a non-profit corporation engaged in the business of disseminating information in regard to family planning, including information regarding abortion. Plaintiff Martin Mitchell in his capacity as President of Mitchell Family Planning, Inc., entered into a contract with plaintiff Tioran to lease an outdoor billboard advertising sign owned by Tioran and located on North Woodward Avenue near Thirteen Mile Road in the City of Royal Oak, Michigan.

The billboard carried the following words:

"Abortion Information.

Male and Female Sterilization Information.

MITCHELL FAMILY PLANNING INCORPORATED,

Niagara Falls, New York. Phone No. 716–285–9133. Local Phone No. 358–4672."

Defendant City of Royal Oak is a municipal corporation existing under the laws of the State of Michigan. Defendant James Cline is the Mayor of the City of Royal Oak. Defendant Allan G. Hertler is the City Attorney for the City of Royal Oak.

On or about September 27, 1971, the defendant City of Royal Oak adopted Ordinance No. 71–10, a copy of which is appended hereto as Exhibit A, wherein

the City of Royal Oak, under penalty of imprisonment and fine, prohibited any person from willfully advertising in his name or in the name of a corporation on a billboard any means whatever whereby abortion may be produced or procured or any information in regard thereto, and further prohibited any person who is engaged in the outdoor advertising business from permitting abortion information upon any sign owned by him.

On September 30, 1971, plaintiffs were advised by defendant Allan G. Hertler by letter that unless the sign were removed, they would be prosecuted under Ordinance No. 71–10.

Plaintiffs assert that the ordinance is unconstitutional because it violates their right to freedom of speech guaranteed by the First and Fourteenth Amendments to the United States Constitution. Plaintiffs also assert that even if the ordinance is constitutional, their sign does not violate its mandate.

Defendants contend that the ordinance is presumptively valid and a reasonable exercise of the police power of the City of Royal Oak. Defendants also allege that the sign does violate Ordinance No. 71–10.

This Court takes jurisdiction under 28 U.S.C. § 1343, which states:

"The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person:

(3) To redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States;"

and under 42 U.S.C. § 1983 which states:

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction

thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and the laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

When a federal court is asked to enjoin the enforcement of a state statute or a state proceeding and declare the state statute unconstitutional, the usual procedure is to assemble a three-judge panel. 28 U.S.C. § 2281 et seq. However, when the statute in question is one with only local application or, as here, a city ordinance, a three-judge panel is inappropriate. Moody v. Flowers, 387 U.S. 97, 87 S.Ct. 1544, 18 L.Ed.2d 643 (1967); Perez v. Ledesma, 401 U.S. 82, 86, 91 S.Ct. 674, 27 L.Ed.2d 701 (1971).

Finding, as it does under the circumstances of this case and the applicable law that this Court has jurisdiction and that the question is properly before this Court, the next question to be considered is that of abstention. While defendants have not argued abstention, it is a matter which the Court must consider when it is requested to act in a manner which may affect the sensitive area of federal-state relations.

The United States Supreme Court has made it abundantly clear in a very recent series of cases that federal courts must abstain except in most unusual circumstances once a state court action has begun. Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971); Samuels v. Mackell, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971); Boyle v. Landry, 401 U.S. 77, 91 S.Ct. 758, 27 L.Ed.2d 696 (1971); Perez v. Ledesma, *supra*; Dyson v. Stein, 401 U.S. 200, 91 S.Ct. 769, 27 L. Ed.2d 781 (1971); and Byrne v. Karalexis, 401 U.S. 216, 91 S.Ct. 777, 27 L. Ed.2d 792 (1971).

Likewise, a federal suit is not proper if no state prosecution is threatened. Golden v. Zwickler, 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969);

Younger v. Harris, supra, at p. 42, 91 S.Ct. 746.

Plaintiffs here are clearly threatened with prosecution by reason of the letters received from defendant Hertler, the City Attorney. However, by agreement of counsel prosecutions have not been initiated due to the pendency of this suit. Under these circumstances plaintiffs have passed between Scylla and Charybdis and this Court must not abstain.

Plaintiffs claim that their right to freedom of speech is being infringed by action taken under color of law, namely a city ordinance. If true such action is prohibited by the First and Fourteenth Amendments. The Supreme Court stated in Lovell v. Griffin, 303 U.S. 444, 450, 58 S.Ct. 666, 668, 82 L.Ed. 949 (1938):

> "Freedom of speech and freedom of the press, which are protected by the First Amendment from infringement by Congress, are among the fundamental personal rights and liberties which are protected by the Fourteenth Amendment from invasion by state action [citations omitted]. It is also well settled that municipal ordinances adopted under state authority constitute state action and are within the prohibition of the amendment [citations omitted]."

Indeed, the presumptive validity which attaches to a legislative enactment is not as great when that enactment has as its purpose the limitations of speech. The Supreme Court spoke to this point in Wood v. Georgia, 370 U.S. 375, 386, 82 S.Ct. 1362, 1371, 8 L.Ed.2d 569 (1962):

> "The ultimate responsibility to define the limits of state power regarding freedom of speech and expression rests with this Court [citations omitted], and when it is claimed that such liberties have been abridged, we cannot allow a presumption of validity of the exercise of state power to interfere with our close examination of the substantive claim presented."

Speech may be limited only to protect a strong state interest. As stated by the Supreme Court in Bates v. Little Rock, 361 U.S. 516, 524, 80 S.Ct. 412, 417, 4 L.Ed.2d 480 (1960):

> "Where there is a significant encroachment upon personal liberty, the State may prevail only upon showing a subordinating interest which is compelling."

This is true even though there may be a legitimate state interest which is sought to be protected. The Supreme Court made this clear in Shelton v. Tucker, 364 U.S. 479, 488, 81 S.Ct. 247, 252, 5 L.Ed.2d 231 (1960):

> "In a series of decisions this Court has held that, even though the governmental purpose be legitimate and substantial, that purpose cannot be pursued by means that broadly stifle fundamental liberties when the end can be more narrowly achieved."

The Supreme Court language quoted above provides guidelines for the consideration of a statute or ordinance which limits speech. Such an ordinance is subject to careful scrutiny and is valid only when narrowly drawn to protect a legitimate, compelling state interest.

The preamble to Ordinance No. 71–10 indicates that three Michigan Statutes were considered when the ordinance was enacted. These are M.C.L.A. § 750.14, M.C.L.A. § 750.15, and M.C.L.A. § 750.34. Indeed, the wording of Ordinance No. 71–10 closely follows the wording of M.C.L.A. § 750.34.

If the substantive evil which the City of Royal Oak seeks to prevent is the violation of M.C.L.A. § 750.14, then the ordinance is drawn in an overly broad manner. The ordinance proscribes advertising on a billboard "any information concerning the producing or procuring of an abortion."

As stated by the Michigan Supreme Court in Gilchrist v. Mystic Workers, 196 Mich. 247, 253, 163 N.W. 10 (1917) and recently restated by the Michigan Court of Appeals in People v. Wellman,

6 Mich.App. 573, 149 N.W.2d 908 (1967):

"The unqualified word 'abortion' in its primary meaning is the equivalent of miscarriage, and does not in the abstract necessarily import crime. Our penal statute . . . adopts the synonymous term 'miscarriage', and recognizes in its provisions that, causing or producing the same, may, under certain circumstances, be innocent, and even necessary to preserve life."

However, this ordinance does not distinguish between abortions which are permitted by M.C.L.A. § 750.14 and those which are not. It encompasses activity which is legal and activity which is illegal.

The ordinance is equally defective because of its breadth if the interest to be protected is "immoral advertising" as covered by M.C.L.A. § 750.34. While it should be noted that the constitutionality of the forerunner of this statute was upheld in People v. Kennedy, 176 Mich. 384, 142 N.W. 771 (1913), that case is not controlling here.

First, the court in *Kennedy* had before it a different portion of the statute than the portion regarding means to produce or procure an abortion. That case decided the constitutionality of portions dealing with advertising for the treatment of venereal disease, "lost manhood", and "lost vitality and vigor". This Court is not free to speculate as to what decision might have been reached by the Michigan Court on other portions of the statute.

Second, Ordinance No. 71–10 is broader in its prohibition than M.C.L.A. § 750.34. While the statute covers "means" whereby a miscarriage or abortion may be produced, the ordinance prohibits "any information concerning the producing or procuring of an abortion." In short, the Michigan Supreme Court did not have before it the broad language challenged in the present suit.

 Thus the failure to draw the ordinance sufficiently narrow makes it constitutionally impermissible regardless of the state interest. Justice Douglas expressed this rule in Griswold v. Connecticut, 381 U.S. 479, 485, 85 S.Ct. 1678, 1682, 14 L.Ed.2d 510 (1965) when he wrote, quoting from N. A. A. C. P. v. Alabama, 377 U.S. 288, 307, 84 S.Ct. 1302, 12 L.Ed.2d 325 (1964):

"Such a law cannot stand in light of the familiar principle, so often applied by this Court, that a 'governmental purpose to control or prevent activities constitutionally subject to state regulation may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms'."

Inextricably involved in the case at bar is the "clear and present danger" test born of dictum written by Justice Holmes in Schenck v. United States, 249 U.S. 47, 52, 39 S.Ct. 247, 249, 63 L.Ed. 470 (1919). Writing for a unanimous Court, Justice Holmes stated that the

". . . question in every case is whether the words used are used in such circumstances and are of such a nature as to create a clear and present danger that they will bring about the substantive evils that Congress has a right to prevent."

 Since First Amendment protections apply to the states through the Fourteenth Amendment, the Court must consider whether the words used on the billboard in question "create a clear and present danger that they will bring about the substantive evils that" the City of Royal Oak "has a right to prevent." Although the Court agrees with defendants that this test is not to be mechanically applied, it seems appropriate here.

If the substantive evil sought to be prevented is the commission of *illegal* abortions, the billboard and its language are distant threats to the causation of such an act. The billboard wording indicates that abortion information is available from either of two telephone numbers.

The Court cannot know what information is given to one who calls those num-

bers. The information may well be that an abortion is available in Michigan only under limited circumstances which do not violate the law. In any event, it is clear that a telephone call must be made, discussions held, and arrangements made before an abortion would be performed. There is no assurance that an illegal abortion will be the result of calling one of the listed numbers and no reason to believe that it would take place immediately.

In considering whether the words of the billboard create a clear and present danger that they will bring about a substantive evil which the City of Royal Oak may prevent, the location of the performance of any abortion which results from the words of the billboard is significant. The Court may take judicial notice that the State of New York has recently liberalized its laws on abortion. The first telephone number listed on the billboard is a New York State number. Again, the Court cannot speculate as to what specific information a caller might receive, but it would not be unreasonable to infer that information would be received concerning the more liberal requirements to obtain an abortion which are presently in effect in New York State, and fair warning be given with regard to the stricter Michigan statute. Clearly the City of Royal Oak has insufficient interest in an abortion to be performed in another state to warrant the limitation of speech. The threat to the City of Royal Oak is minimal and falls squarely within the principle expressed in Justice Stewart's opinion in Kingsley Intern. Picture Corp. v. Regents, 360 U.S. 684, 689, 79 S.Ct. 1362, 1365, 1366, 3 L.Ed.2d 1512 (1959):

> "Advocacy of conduct proscribed by law is not, as Mr. Justice Brandeis long ago pointed out, 'a justification for denying free speech where the advocacy falls short of incitement and there is nothing to indicate that the advocacy would be immediately acted on' [citation omitted]. 'Among free men, the deterrents ordinarily to be applied to prevent crime are education

and punishment for violations of the law, not abridgement of the rights of free speech . . .' [citation omitted]."

The ordinance in question is neither so sufficiently direct nor narrow that it can withstand the requirements of the First Amendment.

> "The First Amendment would, however, be a hollow promise if it left government free to destroy or erode its guarantees by indirect restraints so long as no law is passed that prohibits free speech, press, petition, or assembly as such. We have therefore repeatedly held that laws which actually affect the exercise of these rights cannot be sustained merely because they were enacted for the purpose of dealing with some evil within the State's legislative competence, or even because the laws do in fact provide a helpful means of dealing with such an evil."

United Mine Workers of America, Dist. 12 v. Illinois Bar Association, 389 U.S. 217, 222, 88 S.Ct. 353, 356, 19 L.Ed.2d 426 (1967).

Finally, the Court must find that only an unreasonably broad reading or interpretation of Ordinance No. 71–10 would result in a finding that the words of the billboard violated the ordinance. The sign on its face provides only a source for abortion information without giving either means or specific information regarding the actual production or procurement of an illegal abortion. This Court, like the Court in Cantwell v. Connecticut, 310 U.S. 296, 311, 60 S.Ct. 900, 906, 84 L.Ed. 1213 (1940), must find:

> ". . . that, in the absence of a statute narrowly drawn to define and punish specific conduct as constituting a clear and present danger to a substantial interest of the State, the petitioner's communication, considered in the light of the constitutional guarantees, raised no such clear and present menace to public peace and order as to render him liable to conviction of the . . . offense in question."

Ordinance No. 71–10 of the City of Royal Oak is hereby declared to be unconstitutional and the defendants and their agents are hereby enjoined from prosecuting the plaintiffs or any of them under that ordinance. It is so ordered.

## EXHIBIT A

### ORDINANCE NO. ———

AN ORDINANCE TO AMEND CITY ORDINANCE NO. 58–29, ENTITLED "AN ORDINANCE REGULATING THE ERECTION, CONSTRUCTION, REPAIR, ALTERATION AND MAINTENANCE OF SIGNS AND OUTDOOR DISPLAY STRUCTURES WITHIN THE CITY OF ROYAL OAK; PROVIDING FOR THE ANNUAL LICENSING OF SIGN ERECTORS AND FOR THE POSTING OF BONDS OR INSURANCE POLICIES; PROVIDING FOR LICENSE AND PERMIT FEES; PROVIDING FOR THE REVOCATION OF LICENSES AND PERMITS; PROVIDING FOR THE REPEAL OF CERTAIN ORDINANCES; AND PROVIDING PENALTIES FOR VIOLATIONS THEREOF."

WHEREAS, it is a criminal offense under existing provisions of the Michigan Penal Code for any person to administer to any pregnant woman any medicine, drug, substance or thing whatever, or employ any instrument or other miscarriage unless necessary to preserve fare of its inhabitants, and this governerning body to adopt legislation calcumeans whatever with intent to procure a 14), for any person to advertise, sell or publicly expose for sale any pills, powder, drugs or combination of drugs designed expressly for the purpose of procuring an abortion. (M.C.L.A. § 750.15), for any person to advertise in any manner any medicine, drug, compound, appliance or any means whatever whereby miscarriage or abortion may be produced (M.C.L.A. § 750.34), and

WHEREAS, the public policy of the State of Michigan, as evidenced by the aforesaid provisions of statutory law is clearly in opposition to the performance of abortions, and it has come to the attention of this local governing body that certain outdoor advertising signs have recently been erected in the Detroit Metropolitan area which purport to impart to the travelling public knowledge as to where information may be obtained concerning the procuring of abortions, one such sign having been recently erected within the corporate limits of the City of Royal Oak, and

WHEREAS, it is the duty of this govlated to advance and protect the public health, safety, morals and general welthe life of such woman (M.C.L.A. § 750.ing body deems it necessary and advisable to legislate against the imparting of information to the public, by means of outdoor advertising signs, concerning the procuring of abortions, wherever performed, in support of the public policy of this State as evidenced by the statutory provisions hereinbefore cited,

NOW, THEREFORE,

THE CITY OF ROYAL OAK ORDAINS:

Section 1—City Ordinance No. 58–29 is hereby amended by the addition thereto of a new section, to stand as Section 32A thereof and read as follows:

"Section 32A. ILLEGAL ADVERTISING. Any person who willfully advertises on a sign, in his own name or the name of another person, firm or pretended firm, association, corporation or pretended corporation, any means whatever whereby a miscarriage or abortion may be produced or procured, or any information concerning the producing or procuring of an abortion, or who offers his services by such advertisement to assist in the accomplishment of any such purpose, and also any person engaged in the outdoor advertising business who suffers or permits any such advertisement to be displayed upon any sign owned by him or under his control, shall be guilty of a violation of this ordinance."

Section 2—This ordinance shall take effect ten (10) days after the final passage thereof.